LA VECK *v.* PARKE, DAVIS & CO.

MASTER AND SERVANT — WORKMEN'S COMPENSATION — ACCIDENT — COURSE OF EMPLOYMENT.

Since evidence that tends to sustain a determination of the Industrial Accident Board is not subject to review, in appellate proceedings, on writ of certiorari to review the award of compensation for paralysis that resulted from heat and excessive exertion rupturing a small blood vessel of the brain, claimant having suffered from arterial sclerosis for two years prior to his injury, the question whether it was caused by an accident arising out of or in the course of claimant's employment was for the lower tribunal, and would not be reversed unless a total lack of evidence upon that issue was disclosed. 2 Comp. Laws 1915, § 5465.

Certiorari to the Industrial Accident Board. Submitted January 11, 1916. (Docket No. 94.) Decided March 30, 1916.

Michael La Veck presented his claim for compensation against Parke, Davis & Company for injuries received while in defendant's employ. From an order awarding compensation, respondent brings certiorari. Affirmed.

*Charles M. Woodruff,* for appellant.

*H. R. Martin,* for appellee.

MOORE, J. This is certiorari by the respondent to the Industrial Accident Board to review a finding of the board awarding compensation to the claimant. The brief of appellant begins as follows:

"Appellant does not question the Industrial Accident Board's finding of facts, and only refers to the testimony of record to amplify the same."

It will be helpful to quote from the opinion of the Industrial Accident Board:

"In this case the committee of arbitration denied applicant's claim for compensation, and applicant thereupon appealed the case to the full board for review. Since the arbitration a considerable amount of additional testimony was taken, particularly medical testimony tending to show that the probable cause of the paralysis from which the applicant suffers was a cerebral hemorrhage caused by heat and overexertion, together with a diseased condition of his arteries, known as arterial sclerosis of some two years' standing.

"The evidence fairly tends to show that the paralysis resulted from the rupture of a small blood vessel in the brain. We say 'small' because the paralysis was gradual, being first noticed by the dropping of a flask from the hand, later on by inability to use his arm, and still later by the paralysis of one side of the body. The work which applicant was doing was making bouillon from beef by boiling and certain other processes in a room and with retorts and appliances maintained for that purpose by respondent. The weather was hot, and an extra amount of bouillon was made that week, so as to have enough to meet the demands of the plant while the apparatus was being transferred to a new room which was to be equipped for such work. A high degree of heat was required in the process, and, although the retorts were so constructed as to protect the operator as far as possible from the heat and steam, a considerable quantity of both escaped into the workroom at the times of making the various changes connected with the process. No visible accident occurred and no event causing external violence to applicant's body. It was apparently conceded on the hearing that the cause of the paralysis was in the brain, the applicant contending that it was the rupture of a cerebral blood vessel, while the respondent contended that the paralysis resulted from the clogging of such vessel. The testimony on behalf of the applicant tended to show that on account of the condition of his arteries a cerebral hemorrhage was likely to result from the increased pressure caused

by unusual heat and overexertion, and that in the opinion of his experts such hemorrhage did occur, resulting finally in the total paralysis of one side of the body. Was it an accident within the meaning of the law, and did it arise out of and in the course of applicant's employment?

"Under the doctrine laid down in the *'Spanner Case,'* so-called, and also in other and later English cases, this would be an accident. In *Fenton* v. *J. Thorley & Co.*, 5 W. C. C. 1, the question of what constitutes an accident is exhaustedly discussed, Lord McNaughten's opinion being in subsequent cases regarded as authority, and this being regarded as a leading case. Lord McNaughten's opinion is an able discussion of the principle involved and a review of the authorities. In the opinion of Lord Robertson on page 9, it is said:

"'In the present instance a man by an act of overexertion broke the wall of his abdomen. Suppose the wheel had yielded and been broken by exactly the same act; surely the breakage would be rightly described as accidental.'

"In *McInnes* v. *Dunsmuir & Jackson, Ltd.*, 1 B. W. C. C. 226, it is held that, where overexertion brings on a cerebral hemorrhage and paralysis, it is an accident entitling the workman to compensation. The court say on page 229:

"'It is the giving way of an artery causing effusion of blood on the brain, and I am unable to see any distinction between this kind of physiological injury resulting in disablement, and the kind of injury we had to consider in the case of Stewart.'

"On page 230, the court quote from the *Thorley Case* as follows:

"'If a workman has suffered an injury by breaking a limb or by a rupture while he is trying to lift a weight too heavy for him, then, according to the ordinary use of language, one would say that the injury was caused by an accident which he met with while he was engaged at his work. I think the same rule of construction applies to the question before us, and that we should say that this man suffered from the bursting of a blood vessel while trying to lift a weight too heavy for him. That it might not have been too heavy for a man whose arteries were in a sound condition is nothing to the purpose. In the condition

in which this man's arteries were, he was undertaking a work which was too great for him.'

"In *Ismay, Imrie & Co.* v. *Williamson*, 1 B. W. C. C. 232, it is held that where a seaman died from a heat stroke while raking the fire that it was an accident entitling him to compensation. This is a House of Lords case, and follows the rule laid down in the *Thorley Case.*

"In *Johnson* v. *S. S. Torrington*, 3 B. W. C. C. 70, it was held that, where a fireman working in the hold of a vessel under great heat and drinking large quantities of water had an apoplectic stroke, it was an accident within the meaning of the compensation law. The court treats the principle as established and holds that the determination of the case was a question of fact.

"In *Hughes* v. *Clover Clayton & Co.*, 2 B. W. C. C. 15 (the *Spanner Case*), the court say:

"'Every man brings some disability with him. Any exertion or any external action which might have been innocuous to a man in good health may produce most serious results to the workman bringing with him, as I have said, some disability. This man brought with him a disability of a serious nature—an aneurism—which I quite agree might have caused his death at some time or other without any exertion, usual or unusual. But in this case we have this fact found that a strain incurred by the workman in the ordinary discharge of his duties caused the rupture from which he died. As I read the decisions in the House of Lords, it is not open to this court to say that this is not an accident. It is impossible, I think, to read the judgment of Lord McNaughten in *Fenton* v. *Thorley* without seeing that this case is exactly and precisely within the language which he used. But if there were any doubt about that the more recent decision of the House of Lords in *Ismay, Imrie & Co.* v. *Williamson* is really a much stronger case than this. * * * In that case Lord Loreburn said:

"' "To my mind the weakness of the deceased which predisposed him to this form of attack is immaterial. The fact that a man who had died from heat stroke was by a physical debility more likely than others so to suffer can have nothing to do with the question whether what befell him is to be regarded as an accident or not." * * *

"'If a workman in the reasonable performance of his duties sustains a physiological injury as a result of the work he is

engaged in, this is an accidental injury in the words of the statute.'

"In the case of *Broforst* v. *S. S. Blomfield*, 6 B. W. C. C. 613, where a workman shoveling coal in the fire of a vessel had an apoplectic stroke which was found by the trial court to be due to the rupture of an artery in the brain which was attributed to heat and exertion, it was held that he was entitled to compensation, and that the question was one of fact which the appellate court could not review.

"From a careful examination of all the facts and evidence in the case, the board is of the opinion that the strain upon the weakened arteries of the applicant caused by overexertion and excessive heat was more than they could stand, and resulted in the rupture of a blood vessel in the brain, which was followed by a gradual effusion of blood, resulting in the gradual paralysis, and finally disabling one side of the body. The award of the committee will be reversed, and applicant granted compensation."

We cannot state the claim of appellant better than to quote from the reply brief as follows:

"As pointed out in his brief, respondent does not question the Industrial Accident Board's finding of facts, but does affirm that the essential facts are not clearly stated, and that it is necessary to refer to the testimony to understand what the board means by certain words, phrases, and references. Before doing this, however, counsel for respondent wishes his position as to the law distinctly understood, so that his comments upon the finding of the board may be read in the light thereof.

"Counsel for respondent claims that the principles, the arguments, the reasoning upon which the decision in *Adams* v. *White Lead & Color Works*, 182 Mich. 157 (148 N. W. 485, L. R. A. 1916A, 283), was based control the present case as effectually as it did the case there decided, notwithstanding claimant in the case at bar cannot be said to have suffered an 'occupational' disease. * * *

"That the word 'accident' is not subject to a special construction, but must be understood in the light of

common-law definitions and common-law decisions.  *
*  *

"*Third.* The accident contemplated by the Michigan
act must be some 'casualty' occurring on some day
which can be definitely fixed, and from which the time
within which notice of the injury must be given, and
demand for compensation must be made, can be deter-
mined.  This proposition is clearly indicated in the
*Adams Case.*

"*Fourth.* It is therefore submitted that, unless it
appears that some accident within the meaning of the
common law occurred that was the exciting cause of
the gradually developing cerebral hemorrhage referred
to in the case, the claimant and appellee is not entitled
to compensation under the Michigan compensation
act."

Counsel cites other authorities in support of his
contention, among them *Feder* v. *Traveling Men's
Ass'n,* 107 Iowa, 538 (78 N. W. 252, 43 L. R. A. 693,
70 Am. St. Rep. 212).  Counsel also contends that the
authorities counsel for appellee cites from New Jersey
and Massachusetts are not applicable, because the stat-
utes of those States are different from the Michigan
statute.  It must be conceded there is some confusion
in the authorities.

We cannot agree with counsel that the case of *Adams*
v. *White Lead & Color Works, supra,* is conclusive of
the instant case.  In that case the sole question was:
Is an occupational disease within the statute?  It was
held that it was not.  The case is more like the case
of *Bayne.* v. *Storage & Cartage Co.,* 181 Mich. 378 (148
N. W. 412).  In that case Mr. Bayne undoubtedly in-
tended to do the lifting which he did, but he did not
expect the effect would be to hurt his back, with re-
sulting pneumonia.  In the instant case Mr. La Veck
intended to do the prolonged work which the situation
demanded, but he did not anticipate that because of
doing so his blood pressure would be so increased as
to result in the rupture of a cerebral blood vessel.

190 Mich.—39.

According to the testimony of some of the physicians that result could be traced to the unusual hours of work and the unusual conditions. It was an unexpected consequence from the continued work in the excessively warm room.

Where there is testimony upon which the accident board can base its conclusion, we will not review its action. *Bayne* v. *Storage & Cartage Co.*, 181 Mich. 378 (148 N. W. 412) ; *Redfield* v. *Insurance Co.*, 183 Mich. 633 (150 N. W. 362). Other cases than those mentioned in the opinion of the Industrial Accident Board which support its conclusions are: *Voorhees* v. *Smith Schoonmaker Co.*, 86 N. J. Law, 500 (92 Atl. 280) ; *Doughton* v. *A. Hickman, Ltd.*, 6 B. W. C. C. 77; *Maskery* v. *Shipping Co., Ltd.*, 6 Neg. & Comp. Cases Ann. 708. See, also, the cases cited in note *c*, p. 714, of 6 Neg. & Comp. Cases Ann.

The order is affirmed.

STONE, C. J., and KUHN, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.