Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of JOSEPH MURRAY, Respondent, for Compensation under the Workmen's Compensation Law, against H. P. CUMMINGS CONSTRUCTION COMPANY, Employer, and EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., Insurance Carrier, Appellants.

*Workmen's Compensation Law — injury arising out of and in course of employment — paralysis of left side — working in intense heat.*

Appeal from an award of the State Industrial Commission, entered in the office of said Commission April 22, 1920.

Award affirmed. All concur, except Kiley, J., dissenting, with an opinion.

KILEY, J. (dissenting): The Commission first rejected the claim of the claimant; upon a rehearing the Commission reversed its previous decision

and found in favor of claimant. The Commission found that on July 16, 1918, the claimant received his injury; that on said day at the place where claimant "was injured, the temperature was exceedingly high, in fact it was one of the hottest days in the year, and the radiation of the heat from the surrounding sand and gravel intensified the heat to an unusual degree. The air was inactive, there was no breeze blowing * * *. These injuries resulted from a cerebral hemorrhage produced by the extraordinary exertion and unusual strain and excessive heat heretofore described which accelerated pulsation that intensified the blood pressure and ruptured an artery in the brain." The award was twenty-six dollars and ninety-two cents bi-weekly for life. The carrier objects upon the ground that the disability is not the result of an accidental injury "arising out of and in the course of employment;" that it is not compensable under the Workmen's Compensation Law, and that no injury was sustained "arising out of and in the course of employment." * The facts are as follows: Claimant was forty-nine years old at the time he received the alleged injuries, July 16, 1918. After twelve o'clock on that day he, with five or six other men, were sent to a sand pit to get out sand. A railroad track ran along one edge of the pit upon which flat cars were placed and upon which these men were to shovel sand. The cars, on the day in question, were not in place and had to be moved; this was done by using a pinch bar. The bar was used by inserting the tapered end between the car wheel and the rail, and pressing down on the opposite end of the bar, again raised up and reinserted between the wheel and rail and the same process repeated. In the intense heat the operation was hard work. Men would spell each other in using the bar. The car had been moved in place, and claimant, while he gripped the bar with his left hand, felt that hand contract and become numb; he went upon the car and was adjusting a plank so as to hold the sand upon the car, when his left ankle turned over; he managed to get to the corner of the car, was helped down, and it was then discovered that his left side was paralyzed. He had not felt well at any time during the day; he suffered no pain. All of the medical testimony agree that claimant had a cerebral hemorrhage, bursting of a blood vessel on the right or toward the central portion of the brain. The disagreement is as to what caused it. It appears that he had hardening of the arteries, and claimant's evidence is to the effect that the intense heat and the hard work increased the blood pressure so that the hardened artery gave way at its weakest point. Appellant's evidence is to the effect that conditions did not produce the break; that disintegration set in at some prior time and had progressed to such an extent that the final stage happened to be reached at this time rather than at some other time. This sand pit was really a sand bank on top of a hill. The sand had been taken out so that the bank upon one side was eight or nine feet higher than the floor or bottom of the pit. The other side was open and in such a condition as to the

---

* See Workmen's Compensation Law, § 10; Id. § 3, subd. 7, as amd. by Laws of 1917, chap. 705.— [Rep.

nature of the surface that the railroad switch operated without difficulty. No breeze was stirring. The finding of the Commission is: " The temperature was exceedingly high, in fact it was one of the hottest days in the year, and the radiation of the heat from the surrounding sand and gravel intensified the heat to an unusual degree. The air was inactive, there was no breeze blowing." Again: " While performing this work it was necessary for him to use a great deal of physical effort and unusual strain for more than one hour," and further: " The strain, work and heat heretofore described were the producing causes." It will be observed that no finding was made that the claimant was subjected to any unusual or extra hazard. He worked in the open with the other men; neither sun nor heat could be corralled there, to any degree greater than any other place in the open air, save the one statement in the findings that the sand radiated the heat. No claim was made that the hazard was unusual. The claim is that the hard work in the heat was the proximate cause. It will be observed that claimant points to no unusual hazard the cause or foundation of which was created by his employer. There may be a hazard of employment not created by the employer, as for instance the assault cases that have been sustained. In *Campbell* v. *Clausen-Flanagan Brewery* (183 App. Div. 499) a driver of a brewery wagon suffered a sun stroke on the highway in the open. Mr. Justice Cochrane wrote: " The question is whether the deceased, by reason of his employment, was subjected to a special and increased hazard not common to the public in general but because of the particular circumstances under which he was required to work." He then cites the case of *Hernon* v. *Holahan* (14 State Dept. Rep. 587) and says the principle applicable to those cases was correctly stated by Commissioner Mitchell and quotes from that case as follows: " The deceased was required to work on a very hot day in a close car handling lumber, which required great exertion. This work under these circumstances, therefore, subjected him to a special and increased hazard. The deceased sustained a sun stroke, not by reason of a risk assumed by the public in general, but because of the special circumstances under which he was required to work." The inference is that the commissioner found that the deceased was subjected to a special and increased hazard, not assumed by the public in general. An award was had in that case and was affirmed in this court (182 App. Div. 126), Mr. Justice H. T. Kellogg writing the opinion. In 183 Appellate Division (*supra*) the appeal was by the claimant and this court sustained the determination of the Commission denying an award. These two cases represent the opposite poles of the holdings in this court on these heat cases. *Brezzenski* v. *Crenshaw Engineering Co.* (188 App. Div. 511) is another heat prostration case. The deceased, while at work along the tracks of an elevated railway on an intensely hot day, suffered a sun stroke, and died the next day. The widow and minor children had an award. It was reversed in this court and sent back for further action. Mr. Justice H. T. Kellogg, writing the opinion, said: " In the case at bar the Commission did not find that the deceased came to his death through exposure, by reason of his employment, to heat more excessive than that to which others were subjected, or through any

special hazard of his employment." The respondents urge that their contention is sustained by the holding in *Uhl* v. *Guarantee Construction Co.* (174 App. Div. 571); *Fowler* v. *Risedorph Bottling Co.* (175 id. 224); *Gibbons* v. *Marx & Rawolle, Inc.* (181 id. 142). Those cases all involve the question of a strain and its affect upon the heart. It is suggested, but not deciding the point, that there is a distinction between an individual strain to which the public, in general, is not subjected, and a sun stroke occurring in the open under circumstances to which many, and the public generally, are alike subjected. The struggle on the part of the claimant to bring out the facts in this case was directed toward showing the work was hard and the day hot. Claimant engaged to do his task on that day and in the temperature prevailing. The only item of evidence that looks like anything unusual or different from that existing anywhere in that locality was when it is said the sand reflected the heat; that is insignificant when we recall that claimant had not worked in the sand pit, but upon the track below the pit and in the open country. A man might be required to work in an excessively hot room, on a hot day, over a boiler, under a roof with the hot sun coming down, or in an inclosure exposed to the direct rays of the sun. Such is not the case here. This man was doing the work he was engaged to do; misfortune, which had pursued him, reached him at this time, and unless the Workmen's Compensation Law is amended so as to cover everything happening to an employee when at work, without regard to its cause, I do not see how this award can be sustained. If there was an unusual hazard, inherent in this employment, it ought to be so found; until it is so found the rule laid down in *Gentelong* v. *American Hide & Leather Co.* (194 App. Div. 9) should prevail. I favor a reversal of the award and the case be sent back to the Commission for such further action as may be advised.