FANNIE PACE, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(201 N. W. 348.)

**Master and servant — burden on compensation claimant to prove injury in course of employment; award under compensation act should not be made on conjecture.**

1. In an action against the Workmen's Compensation Bureau to recover on account of an injury, resulting in death, alleged to have been received by the decedent in the course of his employment, the burden is on the claimant to prove, by preponderance of evidence, that the injury was received in the course of the employment, and an award should not be made upon mere surmise or conjecture.

**Master and servant — right to relief under compensation law stated.**

2. It is the intent of the Workmen's Compensation Law that an employee, injured in the course of his employment, shall have relief in all cases where

---

Note.— (2) Recovery regardless of negligence, contributory negligence, or assumption of risk, see 28 R. C. L. 788; 4 R. C. L. Supp. 1853; 5 R. C. L. Supp. 1565.

(3) Physical character of injury, 28 R. C. L. 794; 4 R. C. L. Supp. 1854.

(4) Injury or death due to excessive heat within meaning of Workmen's Compensation Acts, see annotation in L.R.A.1916A, 38, 43 L.R.A.1918F, 937; 13 A.L.R. 979; 16 A.L.R. 1039; 25 A.L.R. 147; 40 A.L.R. 402; 41 A.L.R. 1126; 28 R. C. L. 795; 4 R. C. L. Supp 1855

(6) Pre-existing disease as contributing cause of injury, see annotation in L.R.A. 1917D, 110, 129; L.R.A.1918F, 869; 19 A.L.R. 95; 28 A.L.R. 204; 28 R. C. L. 816; 4 R. C. L. Supp. 1865; 5 R. C. L. Supp. 1576.

he would have had a right of action at common law, and, in addition thereto, to extend his right to recover in other cases, regardless of questions of negligence, contributory negligence, or assumption of risk.

**Master and servant — physical impact not prerequisite to "injury" within compensation law.**

3. A physical impact is not a necessary prerequisite to an "injury," within the compensation act.

**Master and servant — in case of prostration in course of employment proximately caused by excessive heat, resulting in death, compensation allowed.**

4. In a case of prostration of an employee in the course of his employment, the claimant is entitled to compensation if the excessive or unusual heat was the proximate cause of the collapse and the subsequent bursting of a blood vessel, which resulted in death.

**Appeal and error — new trial whether party entitled to new trial for newly discovered evidence largely discretionary; ruling on motion for new trial for newly discovered evidence not disturbed, unless abuse of discretion appears.**

5. Whether, under the 4th subdivision of § 7660, Comp. Laws, 1913, a party is entitled to a new trial on the ground of newly discovered evidence, rests largely in the sound judicial discretion of the trial court and the appellate court will not interfere, unless it appears that such discretion has been abused.

**Master and servant — acceleration of pre-existing disease held "injury" within compensation law.**

6. Notwithstanding the fact that existing disease or infirmity may have predisposed the employee to apoplexy, his dependents may be entitled to compensation if the rupture of the blood vessel, with resulting apoplexy, took place earlier because of the excessive artificial heat, under which the employee labored. Acceleration of a pre-existing disease to a fatal conclusion is, in such circumstances an injury within the compensation law.

**Evidence — facts supported by evidence.**

7. Certain findings of fact challenged by appellant examined and, for reasons stated in the opinion, held to have substantial support in the evidence.

Opinion filed November 26, 1924.

Appeal and Error, 4 C. J. § 2817 p. 835 n. 67; § 2853 p. 877 n. 80. New Trial, 29 Cyc. p. 1031 n. 1. Workmen's Compensation Acts, C. J. § 5 p. 8 n. 37; § 54 p. 63 n. 6; § 58 p. 69 n. 46; § 72 p. 80 n. 25; § 112 p. 115 n. 25; § 114 p. 115 n. 36.

Appeal from the District Court of Ward County, North Dakota, *Moellring*, J.

Affirmed.

*Phillip Elliot, O. B. Herigstad,* and *Scott Cameron,* for appellant.

The authorities seem to be uniform that where a claim is made for compensation that the burden of furnishing evidence showing that the claimant received an injury in the course of employment is thoroughly upon the claimant and that any award which is based upon mere surmise or conjecture will be set aside. 28 R. C. L. p. 812; Chicago & A. R. Co. v. Industrial Bd. 274 Ill. 336.

The burden of proof, that the workman met his death out of personal injury arising out of and in the course of his employment is not sustained if an inference favorable to the applicant can be arrived at only by a death. De Mann v. Hydraulic Engineering Co. 159 N. W. 380; Collins v. Brooklyn Union Gas Co. 171 App. Div. 381, 156 N. Y. Supp. 957; Schmoll v. Weisbrod & H. Brewing Co. 97 Atl. 723.

Propositions must be proved in a court of law by proof of evidence, and that is not satisfied by surmise, conjecture or guess. Barnabas v. Bersham Colliery Co. 3 B. W. C. C. 216.

The Workmen's Compensation Law should receive a liberal construction, but it ought not to be so construed as to take money from one person and give it to another without any basis therefor. Hanson v. Turner Constr. Co. 120 N. E. 693.

*McGee & Goss,* for respondent.

The findings of the trial court, are presumed to be correct, unless clearly opposed to the preponderance of the evidence. Gotchy v. Bureau, 194 N. W. 663.

It is apparent that this is not an ordinary proceeding; that the act has not specifically classified it as a civil action, although otherwise it has mentioned proceedings to be taken for enforcement of the act through civil actions. Easily might the Legislature have so prescribed, if it so desired. Accordingly we are of the opinion that this appeal is a special proceeding pursuant to the Compensation Act; that it is not triable de novo upon appeal to this court. Ibid.

This is a special proceeding, pursuant to the Compensation Act, and not triable de novo on appeal to this court. The findings of the trial court, therefore, are presumed to be correct unless clearly opposed

to the preponderance of the evidence. Altman v. N. D. Bureau, 195 N. W. 288.

As to whether the compensation act should be held to contemplate injuries caused by excessive heat, cold, or other meteorological phenomena, there has been considerable controversy. . . . According to the weight of authority, compensation should be allowed where it is shown that incapacity or death has resulted from sunstroke, heat prostration, frostbite or freezing or lighting. 28 R. C. L. § 87.

JOHNSON, J. This is an appeal from an order of the District Court of Ward County denying a motion for a new trial. The motion was made upon the ground that the evidence was insufficient to sustain the judgment and also upon the ground of newly discovered evidence.

The action is brought by the surviving widow of Wm. M. Pace, to recover compensation pursuant to chap. 162, Session Laws, 1919. The decedent had been employed by the Northern States Power Company at Minot for over two years prior to and up to the time of his death, on the 7th of June, 1921. The power company had complied with the compensation act and was duly insured. The duties of the decedent consisted in part in cleaning and repairing boilers in the plant of his employer at Minot, under the supervision of an engineer. Decedent was 54 years of age at the time of his death. He had been confined to his home from May 30th until the time of his death. The evidence tends to show that on May 30 or 31, the decedent came to the office of one Dr. Pence, two or three blocks from the power plant; that the petitioner accompanied the decedent to the doctor's office in a taxicab, and that the decedent had, just prior to the visit on the same day, collapsed at his place of work. On the occasion of that call his blood pressure was found to be 180 or 185 millimeters of mercury—35 or 40 above normal—and it appeared that he was then suffering from heart leakage, or, what the doctor calls, mitral regurgitation. The doctor advised the decedent to discontinue heavy work. On June 7th, following, Dr. Pence was summoned to the petitioner's home and on arriving found Pace dead. The doctor diagnosed the cause of death as "brain hemorrhage, otherwise known as apoplexy." The expert testimony is to the effect that with high blood pressure any excitement or labor may cause a blood vessel to burst in the brain. The evidence

shows that the decedent, during the days intervening the 30th or 31st of May and June 7th, consulted one Dr. Newlove; that very shortly before his death decedent's blood pressure was 220, accompanied by the regurgitation of the heart, referred to by Dr. Pence. Dr. Newlove testifies that the patient was then in a dangerous condition and says he advised him to go home and not to come back to the office as it would be dangerous to walk up the stairs.

There is much testimony in the record with respect to the character of the work and the nature of the duties performed by the decedent at the power plant. The plant consisted of six boilers arranged in pairs; two of these were cleaned each week. The two that were to be cleaned were "taken off the line," that is, the fire was drawn and the ashpit, the combustion chamber, and the arches cleaned of accumulated ashes and the flues were scraped and repaired. The cleaning of the arches and the flues over the arches, it seems, exposed the workmen at times to intense heat. The workmen had to enter a manhole about 16 in. one way and about 12 in. the other way. The arch cleaned was about 5 ft. long and the cavity above the same would become covered with hot ashes which could not be reached from the outside. It seems that boards were thrown on the arches for the workmen to stand on. The testimony tends to show that the arch was too hot without the boards and that the boards would sometimes catch fire. It would take about five or six minutes to clean the ashes over the arch, but some of the witnesses testify that it was seldom possible for one man to complete the work without coming out because of the great heat. Three men did this work, it seems, by turns, the decedent and two others, by the names of Brown and Daley. There is testimony to the effect that Pace would go into the boilers when it was so hot that others would not go.

It appears that a new chief engineer came on the job in December preceding the 7th of June, when Pace died, and that this new chief engineer cut down the time of cooling one-half, with the result that the boilers were much hotter and the work more severe than before. This is denied by the engineer. One witness testifies that he came out of that place dizzy from the heat and dust. The testimony tends to show that when Pace came out of the boiler he would be wet with perspiration, would have to sit down and could do nothing for a while. One of the witnesses testified that he acquired heart trouble while doing this work

and was treated by Dr. Newlove and that he left the plant because of the trouble. The testimony shows that after the death of Pace some respirators were procured for the men, with the result that the conditions under which they worked were somewhat improved.

The medical testimony is to the effect, in general, that high blood pressure is frequently found in apoplexy cases; that severe work may increase blood pressure; that excessive heat would tend to overcome one suffering from high blood pressure. One medical witness testified that in view of the fact that the decedent had been working around hot boilers for several months continuously and had to enter such boilers for a period of from one to three minutes, or as long as he could stand the heat, this work and the conditions under which the work was performed might be a contributing, aggravating or exciting cause of the high blood pressure and the condition of the heart described by Dr. Pence and Dr. Newlove. In fact, this witness testifies that these conditions and the work performed by the decedent might possibly be the sole cause. Dr. Newlove testified on cross examination that a man with high blood pressure who went into hot boilers or in a place of excessive heat would be in danger of being overcome immediately and that if he were not overcome immediately it would weaken him; "it would still be a little more and a little more all the time for his resistance." Another physician, Dr. Kermott, answered a hypothetical question based on the facts, to which reference has already been made, saying that in his opinion the work described and performed by the decedent would be "contributory to the condition that caused his death, if the death was due to apoplexy." It is not disputed that death was due to apoplexy. The medical testimony shows that in all probability a man would not survive for any length of time working under the conditions described and with a blood pressure of 185 or 220. One Dr. Erenfeld testified that the labor and the heat would aggravate the condition and that hard work would be an aggravating cause of high blood pressure. This witness said: "I would say that the work under the circumstances in the case which was indicated, that it was contributory; that these things were contributory to his death." This witness says that he has no question that the working conditions contributed to bring about the death of Pace on June 7. In the opinion of some of the medical witnesses, the heart condition described could not have been

of long standing because, as one of them says, "it is hard to believe that a man with a leakage of the heart would be able to stand such excessive heat in a boiler to any extent." He further says that he can scarcely believe that a person with a heart lesion as described and with high blood pressure could remain in the boiler under the conditions of excessive heat described, without immediate collapse. He thinks that the workman would not long survive under such conditions.

The case is here on the findings of the trial court and the important question is whether or not the evidence is sufficient to support the findings on which the judgment is predicated, to-wit, that death was due to an injury received in the course of the employment. The court found that the decedent was an employee of the insured, the Northern States Power Co.; that the power company was at all times insured under the Workmen's Compensation Act; that he was earning $160.00 a month at the time of his death; that the petitioner is the surviving widow; that on or about the 29th of May, 1921, Pace suffered a collapse while at his work in the plant of the power company; that such collapse resulted from the performance of his work and in the course of his employment; that the collapse and illness contributed to his death; that he was examined by Dr. Pence on or about the day of the collapse; that his physical condition on that day disclosed a blood pressure of 180 to 185 millimeters of mercury and a heart lesion; that within a week thereafter the decedent was examined by Dr. Newlove, who found a blood pressure of about 220, with the same heart lesion as found by Dr. Pence; that Pace died on June 7, 1921, from apoplexy, caused by the bursting of a blood vessel in his brain, because of high blood pressure. The court found as a fact that the high blood pressure was in whole or in part caused by, and the result of, duties performed in the course of his employment. The court found further that the labor of decedent at his employment contributed to cause the condition of his heart as found by the physicians in May and June, 1921, and that the decedent was physically sound and well about two and one-half years before his death, when he entered the employ of the power company.

It is not questioned that the findings of fact, if they have substantial support in the evidence, are sufficient to support the judgment. It is contended by the appellant that the findings are without substantial

support in the evidence and are in fact contrary thereto. This is the main question in the lawsuit.

The burden of showing that the injury which resulted in death was received in the course of the employment is upon the claimant and an award should not be made upon mere surmise and conjecture. 28 R. C. L. 812.

Chapter 162, Session Laws 1919, commonly known as the Workmen's Compensation Law, in § 2 provides: " 'Injury' means only an injury arising in the course of employment. . . ." In § 10 it is provided that the Bureau shall disburse the fund to employees of insured employers "who have been injured in the course of their employment;" and in section 11 the same phrase is used. The language of many of the compensation acts is that injuries are compensable only if they arise *out* of and *in* the course of the employment. The Pennsylvania Act is on this point like that of North Dakota. In Lane v. Horn & H. Baking Co. 261 Pa. 329, 13 A.L.R. 963, 104 Atl. 615, 17 N. C. C. A. 998, the court recognizes that there is a substantial difference. To the same effect see Cox v. Kansas City Ref. Co. 108 Kan. 320, 19 A.L.R. 90, 195 Pac. 863. Consideration of this question is not necessary. The injury which, it is contended, resulted in the death of Pace—the collapse and the broken blood vessel—if there was any injury within the act, not only arose in the course of the employment, but out of it, that is, by reason of the nature of the work.

Section 1 of the Compensation Law recites, as one of the purposes the legislature had in mind, that workmen injured in hazardous employments shall have sure and certain relief regardless of questions of fault. In Fahler v. Minot, 49 N. D. 960, 194 N. W. 695, this court held, in substance, that an employer who did not comply with the compensation act was liable to an employee injured in the course of the employment, wholly regardless of questions of negligence, either on the part of the employer or the employee. It was doubtless the purpose of the legislature to insure to an employee, injured in the course of his employment, relief in all cases where he would have had a right of action at common law, and in addition thereto to extend his rights to recover in other cases, regardless of questions of negligence, contributory negligence or assumption of risk. Peru Plow & Wheel Co. v. Industrial Commission, 311 Ill. 216, 142 N. E. 548.

The trial court found that the decedent collapsed at the power plant on or about May 29, 1921, while at his work, in the course of his employment, and as a result of the performance of his duties; and that the collapse and illness that followed contributed to his death. The court found that the high blood pressure was, in whole or in part, caused by his work. It is true the decedent lingered for seven or eight days after this collapse, but the testimony shows that he did not work; that his blood pressure increased and that the condition of his heart grew worse rapidly until the date of his death.

In England the settled rule is that in cases of prostration from artificial heat, in the course of the employment, compensation is allowed. Ismay, I. & Co. v. Williamson, 1 B. W. C. 232; Johnson v. The Torrigton, 3 B. W. C. 68; Olson v. The Dorset, 6 B. W. C. 658. See also Walsh v. River Spinning Co. 41 R. I. 490, 13 A.L.R. 956, 103 Atl. 1025; Lane v. Horn & H. Baking Co. supra. We do not believe it is necessary to discuss the evidence further or to indulge in refinements of definition as to what constitutes "injury" within the meaning of the compensation law. A physical impact is not a necessary prerequisite to an "injury" within the act. In Brightman's Case, 220 Mass. 17, L.R.A.1916A, 321, 107 N. E. 527, 8 N. C. C. A. 102. It is not claimed by appellant that the diseased condition of the heart was the direct outgrowth of the occupation, that is, that it was an occupational disease; it is rather contended by the Bureau that the petitioner failed to establish that any injury in the course of the employment took place. On the testimony in the record, the collapse might have been found to have been the proximate result of exertion in an overheated boiler. The testimony of petitioner's witnesses indicates a causal connection between the conditions under which Pace labored and his decease. The trial court saw, heard and believed these witnesses. We have summarized the evidence briefly and think that the findings of the trial court, that the death resulted from an injury received in the course of the employment, have sufficient support in the evidence. It is quite immaterial that the decedent may have brought with him a disability. The evidence supports a finding that the disability brought with him was aggravated by the conditions under which he was compelled to labor and that ultimately there came a time when his weakened heart

and arteries could no longer stand the strain, when he suffered a collapse and died from apoplexy a few days later.

The evidence tends to show that the defendant worked under conditions that exposed him to a special risk from intense and unusual heat; that such conditions will aggravate high blood pressure and may result in apoplexy. The court found that the high blood pressure was wholly or partly due to the heat; that this risk of the employment was a contributing cause of his condition and his death. In other words, the excessive and unusual heat was the proximate cause of the collapse and the subsequent bursting of the blood vessel which resulted in death. See Carroll v. Industrial Commission, 69 Colo. 473, 19 A.L.R. 107, 195 Pac. 1097. That this end was not foreseen, intended, or anticipated, will scarcely be doubted. It was an "injury" in the course of the employment, of which the collapse on the premises of his employer was the first concrete and substantial evidence; from that time there is no break in the causal connection between the employment and the death. LaVeck v. Parke, D. & Co. 190 Mich. 604, L.R.A.1916D, 1277, 157 N. W. 72.

The defendant moved for a new trial upon the ground of newly discovered evidence material to the defense. The motion was supported by the affidavit of a former member of the Bureau and one of the counsel for the Bureau in the court below and on this appeal; by the affidavit of a physician who attended the decedent in a professional capacity from 1905 until 1914; by the affidavit of a former wife, of a daughter of the decedent, and of a man who was acquainted with Pace while he lived in the City of Wilton, N. Dak. from 1902 until 1914. The general purport of the affidavits is that the decedent, from 1905 until 1914, was afflicted with heart trouble, consisting of fatty degeneration of the heart and leakage of the valves; that he was suffering from arterio sclerosis; that he had at one time been afflicted with syphilis; that he indulged in the use of alcoholic stimulants to excess; that he had at different times attacks of "heart failure and fainting." The affidavit of the physician tends to show that in 1913 and 1914 the blood pressure of decedent was "round 186 and 190," and that the decedent, on March 14, 1914, was rejected as an undesirable risk by a life insurance company. The affidavits show that at times the decedent was nervous, irritable, ill-tempered and worried a great deal; that he suffered from

mental distress of some sort; that the decedent, during this period, from 1909 to 1914, told one of the affiants that he was suffering from a poor heart and could not stand the heat. The affidavit of the daughter is to the same general effect and in addition she deposes that she received a letter from the petitioner, dated June 5, 1921, two days before petitioner's husband died, in which the petitioner says that the decedent was not working and was "laying off," but in which letter she does not mention the alleged collapse which took place on May 29 or May 30. The purpose of offering this affidavit and letter is to establish the contention of the defendant that the testimony of the petitioner as to the collapse is false. This daughter likewise testifies that she visited with the petitioner and discussed frequently the circumstances preceding and following the death of petitioner's husband, but that at no time did petitioner mention the alleged collapse or that the decedent was overcome at the plant.

The defendant contends that this evidence was discovered after the trial and could not, in the exercise of ordinary diligence, have been discovered in time for the hearing; that the Bureau was not apprised of the testimony of the petitioner with reference to the alleged collapse at the plant and did not know of this claim until at the time of the trial; and that upon a new trial, with all this testimony, the Bureau would be able to establish that death did not result from an injury received in the course of the employment, but that it was due to the physical condition of the deceased as the sole cause.

Section 7660, Comp. Laws 1913, as amended by chap. 131, Session Laws 1921, enumerates the grounds on which a new trial may be granted. In the fourth subdivision it is provided that a party may be granted a new trial on the ground of "newly discovered evidence material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial." This statute has been considered by this court in many cases. In McGregor v. Great Northern R. Co. 31 N. D. 471, pp. 492, 493, 154 N. W. 261, Ann. Cas. 1917E, 141, it is said: "It is elementary that a motion for a new trial on the ground of newly discovered evidence is addressed largely to the sound judicial discretion of the trial court, and that the appellate court will not interfere unless it is shown that such discretion has been abused. . . ." The following is quoted with approval from

1 Hayne, New Trial & Appeal, § 91, p. 431: "Not only must the newly discovered evidence be of such a character and so presented as to render it probable that a different result will or ought to follow a retrial, but the question itself as to whether the evidence is of such a character, and whether a different result is probable or ought to follow, is one addressed to the discretion of the trial court, and the exercise of that discretion will not be disturbed except in case of a manifest abuse." To the same effect see State v. Cray, 31 N. D. 67, 153 N. W. 425; Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419; and Howlett v. Stockyards Nat. Bank, 48 N. D. 933, 936, 188 N. W. 172. In a case, stronger on the facts than the one at bar, it has been held:

"Refusal to grant new trial will not be disturbed on appeal on the ground that false material testimony was introduced, where it appears that the motion for new trial merely contained the affidavit of a witness discovered after the trial, who would testify that the facts were the opposite to those contained in such alleged false testimony.". Fiorina v. Wabash R. Co. — Mo. App. —, 260 S. W. 123.

It must be conceded that the newly discovered evidence tends to show that the decedent was at one time addicted to the use of intoxicating liquor, although that is denied by testimony now in the record; that due partly to a syphilitic condition of long standing—also denied, in effect—and partly to an excessive indulgence in intoxicants, he was suffering, from 1909 to 1914, from arterio sclerosis to a degree somewhat beyond what might be expected in a man of his age in normal health. Notwithstanding the fact that existing disease or infirmity, from whatever cause, may have predisposed him to an injury of the character that caused his death—the bursting of a blood vessel—his widow may be entitled to compensation if the rupture of the blood vessel, with resulting apoplexy, took place earlier because of the excessive heat. Acceleration of a pre-existing disease to a fatal conclusion would, in such circumstances, be an injury within the compensation law; that such acceleration took place is established by the testimony and by the findings of the trial court. La Veck v. Parke, D. & Co. 190 Mich. 604, L.R.A.1916D, 1277, 157 N. W. 72; Shadbolt v. Department of Labor & Industries, 121 Wash. 409, 209 Pac. 683; W. A. Jones Foundry & Mach. Co. v. Industrial Commission, 303 Ill. 410,

135 N. E. 754; General American Tank Corp. v. Weirick, 77 Ind. App. 242, 133 N. E. 391; Murray v. H. P. Cummings Constr. Co. 197 App. Div. 903, 188 N. Y. Supp. 193; Brightman's Case, 220 Mass. 17, L.R.A.1916A, 321, 107 N. E. 527, 8 N. C. C. A. 102; Crowley's Case, 223 Mass. 288, 111 N. E. 786; 19 A.L.R. 96, 111, note.

Defendant strenuously contends that the finding that the decedent collapsed at the plant is without substantial support in the evidence; and that with this finding out of the case, the chain of causation between the death and the employment is completely broken. No witness, save the petitioner, testified to such collapse. Employees at the plant said that they never knew or heard of a collapse. The widow did not mention this incident when she was before the Bureau on June 14, 1922. The state of the record is such that a finding the other way would have substantial support in the evidence. The trial court saw and heard the petitioner and her exposition of the facts. He believed her and found there was a collapse, as she claimed. In the circumstances we do not feel justified in disturbing this finding.

The affidavit of the doctor to the effect that decedent had been suffering from heart trouble, hardening of arteries and syphilis during the period of 1905–1914, was, of itself, not necessarily sufficient, as a matter of law, to require a different result. As has been pointed out, the fact that the employee brings with him a weakness or a disability that may predispose him to an injury which results in death, does not necessarily debar decedent's widow from the right of compensation. Evidence of this pre-existing infirmity might, doubtless would, have strengthened the position of defendant to the effect that there was a total lack of causal connection between the death and the employment; the trial court, however, concluded that it was not sufficient to overcome the express testimony of other witnesses tending to establish the existence of such causal connection. We can not say that this holding of the court below was an abuse of discretion.

The trial court, after "giving consideration to all said affidavits presented by defendant on behalf of motion for new trial," concluded that the same should be in all things denied. It must be noted that this is not a case properly triable to a jury; Gotchy v. North Dakota Workmen's Compensation Bureau, 49 N. D. 915, 194 N. W. 663; that it was tried to the court and that the court made findings of facts; that

it must be deemed on appeal as conclusive that the trial court, after reading the affidavits setting forth the newly discovered evidence, was of the opinion that a new trial of any issue of fact involved in the case would not and ought not to lead to a different result. We are of the opinion that there was no such abuse of discretion in denying the motion as to require this court to order a reversal. The affidavit of the daughter, as well as the letter attached, are at most but negative evidence—there is no evidence that petitioner made a statement inconsistent with her testimony at the hearing, rather that she failed to mention facts to which she testified on the trial. We think the record does not fully support the claim that the Bureau was taken by surprise when petitioner testified that her husband suffered a collapse at the plant. At the hearing before the Bureau on June 13, and 14, 1922—this case was tried Jan. 17, 1923—the Bureau apparently knew that some such claim had been made because the members who examined the witnesses inquired of them if there had been or if they had heard that Pace had collapsed at the plant.

The judgment of the trial court is affirmed.

BRONSON, Ch. J., and NUESSLE, CHRISTIANSON, and BIRDZELL, JJ., concur.