## PACIFIC EMPLOYERS' INS. CO. et al. v. PILLSBURY, Deputy Compensation Com'r, et al.

### No. 6794.

Circuit Court of Appeals, Ninth Circuit.

Sept. 7, 1932.

W. N. Mullen, of San Francisco, Cal., for appellants.

Geo. J. Hatfield, U. S. Atty., and Leo C. Dunnell, Asst. U. S. Atty., both of San Francisco, Cal., for appellee Pillsbury.

Charles P. Knights, of San Francisco, Cal., for appellee Hansen.

Before WILBUR, Circuit Judge, and JAMES and NORCROSS, District Judges.

JAMES, District Judge.

The husband of appellee Margaret T. Hansen, while working as a stevedore for the Western Terminal Company, became ill and died two days thereafter. The deputy commissioner, under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 USCA § 902 et seq.), made an award of compensation to the widow dependent. Thereupon appellants' employer

and insurance carrier brought their proceedings in the District Court,· seeking to have enforcement of the award restrained. The record of the proceedings had before the deputy commissioner were filed with the complaint in the District Court. A motion ·to dismiss for insufficient cause shown was granted, and from that judgment appeal was taken which has brought the case here.

No point is made by appellants respecting the fact or the maritime nature of the employment of Hansen, and no defect in the form of the proceedings as brought to review the award is suggested by appellees.

Appellants, in brief, insist, first, that the work engaged in by Hansen was not the cause which brought on his fatal illness; second, that the alleged injury suffered by Hansen was not one included in the definition of the statute which makes compensable "accidental injury or death arising out of and in the course of employment" (33 USCA § 902, subdiv. 2); third, that, assuming that a compensable case was made out, the deputy commissioner allowed the widow costs of burial without any proof before him that such costs were incurred or paid.

 Considering the case presented, it need scarcely be stated that in deciding questions of fact the deputy commissioner acted with authority to make a final judgment. Conflict in testimony must here be disregarded; preponderating weight may not be measured. The court may only inquire whether an essential matter of fact has been found without supporting evidence. Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598.

Hansen, the employee, had been engaged for fifteen years or more as a stevedore. He was 52 years of age at the time of his death. He was not shown to have had any serious illness for many years prior to receiving the alleged injury. On the 8th of October, 1930, he was employed by appellant Western Terminal Company to assist in the discharging and loading of cargo on a ship at the dock. On October 11th he was at work with the other stevedores stowing cargo. A portion of the cargo being handled was case goods weighing about fifty pounds per case. Customarily two cases were lifted by a single stevedore. There were also sacks of seed to be stowed, each weighing in excess of two hundred pounds, and these .were stacked to the beams about six feet above the floor of the hold. The stevedore foreman characterized this as very heavy work, as the sacks of seed had to be lifted above the men's heads. However, four men were used to stack the sacks, at least those that went above head height. Hansen went to supper at 5 o'clock on the day in question, and when he came back the foreman noticed that there was something the matter with him as he was stooped over and holding his hand to his chest. Hansen told the foreman that he felt bad and hurt inside. He said "that something must have pulled loose inside of me." He had intended to work on the overtime shift during the night. The foreman told him that he had better see a doctor, and the man went home. A fellow employee who was working with Hansen had noted at 5 o'clock that Hansen appeared to be ill; that his face was "ashen color." Hansen said to this man that "he felt something burst inside while he was down below"; that he had felt that about a half hour before dinner time, and had stopped work and sat down for a few minutes. Hansen later in the evening applied to a neighbor, asking that an ambulance be called. He was taken to a hospital, and there died on October 13th. The autopsy showed he had suffered a pneumothorax. The left lung was found in a completely collapsed condition. The pleural cavity was filled with fluid. No tearing of the lung tissue or covering was found, but the autopsy physician testified that the fluid content of the cavity was foul, which indicated to him that there had been a previously diseased condition. There was some medical testimony to the effect that due to the diseased condition the collapsing of the lung might have occurred at any time, regardless of any physical effort being made by the man. There was other medical testimony which attributed the heavy labor as the immediate cause of the collapse.

 The argument of appellants that there was no "accident injury" shown, is proposed under two assumptions—one, that to be compensable the injury must be shown to be the result of external violence; two, that preexisting disease contributing to produce bodily damage, which would likely not have resulted except for such ·disease, makes inapplicable the statute provision. Neither assumption is tenable under the law as it is settled by the decisions construing acts of the kind considered. Cases which appellants cite are in their greater number those where accident insurance policies were construed. Such policies, issued usually upon moderate premium charges, expressly limit the cause of injury to external violence, and exclude from their benefits cases where disease has contributed to the harmful results. A dif-

ferent rule, one required by express contract terms, applies in such cases. Furthermore, that a liberal interpretation is to be given industrial compensation acts, the authorities are in practical agreement, this because of the humane considerations which have influenced the passing of such laws. The policy of the legislation is to the end that industries shall bear the burden of contributing to the disabled who are hurt in the service, where the injuries suffered are of an unexpected kind and not merely a part of the "wear" of the work. See Sullivan Min. v. Aschenbach (C. C. A. 9) 33 F.(2d) 1 (Idaho Compensation Law), and cases there collected. The burden referred to as imposed upon the industries becomes in the end one which the public bears. The employer presumably will compute the expense in his overhead and so it will be represented as a part of the cost of his product.

▊ The employer accepts the employee subject to physical disabilities, which may make the latter more susceptible to injury than would be a stronger or more robust person; and the former may suffer an accidental injury where his more fortunately constituted fellow workman may suffer no injury at all. The approved definition of "accidental injury" or "injury by accident" is "An unlooked for mishap or untoward event which was not expected or designed"; and as "something out of the usual course of events, and which happens suddenly and unexpectedly, and without any design on the part of the person injured." Sullivan Min. Co. v. Aschenbach, supra; Western Indemnity Co. v. Pillsbury, 170 Cal. 706, 151 P. 398; Fidelity, etc., v. I. Acc. Com., 177 Cal. 614, 171 P. 429, L. R. A. 1918F, 856. The cases cited point to decisions of the English courts, in which country compensation laws were of earlier adoption than those of most of our states; hence also earlier than the federal statute (1927). A notable English decision by the House of Lords in 1903, is that made in the case of Fenton v. Thorley, Appeal Cases 1903, p. 443. The Workmen's Compensation Act of England was passed in 1897. The act there provided that compensation should be awarded an employee who suffered "personal injury by accident arising out of, and in the course of his employment." No difference in meaning, we apprehend, can be attributed to the English statute in the part quoted than is to be interpreted from the federal statute considered here. "Injury by accident" and "accidental injury" mean the same thing. In the case just named, a workman was employed to look after a machine used in the

manufacture of cattle feed. At intervals he was required to move a lever and turn a wheel for the purpose of raising a lid and removing the contents of the machine. In one instance the wheel would not turn, and another workman was called to assist in turning it. While so employed, Fenton, the injured workman, felt, as he described it, "a tear on the inside." A rupture had been caused. Lord Macnaughten, writing the opinion said, first: "Fenton was a man of ordinary health and strength. There was no evidence of any slip, or wrench, or sudden jerk. It may be taken that the injury occurred while the man was engaged in his ordinary work, and in doing or trying to do the very thing he meant to accomplish." The Court of Appeal had held that the injury sustained was not an "injury by accident," because what the man at the time was doing he did deliberately and in the ordinary course of his work, and that which happened was in no sense a fortuitous element. In reversing this judgment, Lord Macnaughten said: "A man injures himself suddenly and unexpectedly by throwing all his might and all his strength and all his energy into his work by doing his very best and utmost for his employer, not sparing himself or taking thought of what may come upon him, and then he is to be told that his case is outside the Act because he exerted himself deliberately, and there was an entire absence of the fortuitous element! I cannot think that that is right." In 1910, another case (Clover, Clayton & Co. v. Hughes, L. R. Appeal Cases, 1910, page 242), stronger in its facts against the claimant than is this case, reached the House of Lords. In the opinion the admitted conditions were stated: "A workman, suffering from an aneurism in so advanced a state of disease that it might have burst at any time, was tightening a nut with a spanner, when the strain, quite ordinary in this quite ordinary work, ruptured the aneurism and he died." Lord Loreburn declared that the occurrence was an accident, an untoward event, not designed. He said that the source of the force producing injury need not be external, adding: "I think it may also be something gone wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel. If that occurred when he was lifting a weight it would be properly described as an accident. * * * I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. * * * Nor do I think we should attach any importance to the fact that this man's health was as described. * * * An accident arises

out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health." Lord Macnaughten concurring said: "The man broke a part of his body, and he certainly did not mean to do it." Glasgow Coal Co. v. Welsh, was a case heard in 1916 before the Lords. Butterworths' Workmen's Compensation Cases, vol. IX, page 371. The decision approved and applied the interpretation of the phrase "personal injury by accident" as held in the earlier cases. As to acceleration or aggravation of pre-existing disease, affording ground for compensation, in addition to Clover, Clayton & Co. v. Hughes, above quoted from, see Eastman Co. v. Industrial Acc. Com., 186 Cal. 587, 594, 200 P. 17. Counsel for appellee cite several decisions of state courts, each of which is in harmony with those hereinbefore referred to.

■ Sufficient evidence appears in the record to sustain the conclusion of the deputy commissioner that Hansen's illness, which terminated in his death, was brought on by strain due to the heavy work in which he engaged on October 11th. The injury caused and the death which ensued were due to accident. The award was clearly authorized by the law.

■ As to the inclusion of the sum of $200 (statutory amount) in favor of the widow on account of burial costs: The contention that there was no evidence offered to sustain this allowance is well answered by appellees. The widow's statement of claim, duly verified set forth that there had been an undertaker's bill paid in the amount of $255.30. In the answer filed by appellants before the deputy commissioner, no issue was raised as to the correctness of the amount or as to the fact that the charge had been paid. The deputy commissioner was authorized to conclude, in the absence of any contest, that the amount stated in the claim, made under the oath of the claimant, was correct.

The judgment is affirmed.