SOUTHERN SHIPPING CO. et al. v. LAWSON, Deputy Compensation Com'r.

No. 787.

District Court, S. D. Florida, Jacksonville Division.

Dec. 6, 1933.

Rogers & Towers and Lawrence Case, both of Jacksonville, Fla., for plaintiffs.

John W. Holland, Dist. Atty., and William A. Paisley, Asst. Dist. Atty., both of Jacksonville, Fla., for defendant.

STRUM, District Judge.

This is a suit in equity to set aside, as not in accordance with law, a compensation award made by the deputy commissioner of the Sixth compensation district to the alleged widow of Sam Peyton, a deceased employee of Southern Shipping Company; the award being made pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 USCA § 901 et seq.

The sole question to be considered is whether or not there is competent evidence to support the deputy commissioner's finding that the deceased employee died in consequence of accidental injuries "arising out of and in the course of (his) employment," both of which conditions must be established to justify the award. 33 USCA § 902 (2). See McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306. No point is made concerning the amount of the award; the only contention being that there is no evidence to support the deputy commissioner's findings of liability. The beneficiary's status as wife of the deceased has been questioned here by amendment to the bill of complaint, but as the question was not raised before the commissioner, it will be regarded as having been waived and will not be considered here.

The deceased employee was a hatch tender on board a vessel from which was being unloaded a cargo of Peruvian guano. His duties were to remain on deck near the hatch coaming, and give signals to the oper-

ator of the cargo hoist, in doing which he was required to be on his feet substantially all the time and to move about from one side of the hatch to the other; but his duties involved no heavy physical exertion. He was in the open air, no unusual weather conditions obtaining. He had previously worked regularly at stevedoring whenever he could secure such work.

On the occasion in question, deceased commenced work at 7 o'clock a. m., September 15, 1932, and worked continuously until about 5:30 o'clock a. m. on September 16th, a period of about twenty-two and a half hours, with thirty-minute intervals for dinner at 12 noon, supper at 5 o'clock, and at midnight on the 15th, so that his net working time would be about twenty-one hours during the elapsed twenty-two and a half hours.

At about 4:30 o'clock a. m., September 16th, after deceased had been on duty about twenty-one hours, although he had suffered no external violence such as a fall or blow, began bleeding in his nostrils and mouth—said he "was bleeding inside." Water was poured on his face and the back of his head, which appeared to stop the bleeding. He resumed work and continued until about 5:30 o'clock a. m., when his crew ceased work, at which time he said he was "feeling fine." He went home and lay down to rest, but during the morning began spitting up blood in large quantities and died about 1:30 o'clock p. m., September 16th.

An autopsy revealed that deceased had an aneurysm of the descending aorta which had ruptured, the resulting hemorrhage causing his death. The aneurysm was apparently of syphilitic origin and of long standing. When syphilis is the predisposing cause of such an aneurysm, an erosive process is set up in the artery which causes it to weaken and distend, and ultimately to rupture when the artery reaches the limit of its resistance. An arterial aneurysm is a soft hollow pulsating tumor, containing blood, resulting from preternatural dilation of the diseased coating of the artery. Sometimes a rupture is precipitated by violence, exertion, or shock. Sometimes it occurs while the victim is at rest or asleep, and without violence.

The question before the commissioner was whether death was due to natural causes or to accidental injury of which the duties of the deceased's employment was a proximate cause. Ayers v. Hoage, 61 App. D. C. 388, 63 F.(2d) 364. The commissioner found the latter to be the case.

The doctor who performed the autopsy testified that the work deceased had just done, involving the long period of standing and walking, "probably might have" tended to cause a rupture of the aneurysm, and "may not have had anything to do with a direct cause of the rupture, that is a problematical question"; again that "it (the work) probably might have hastened the inevitable end"; and again that "it (the work) possibly might have had some effect that would make earlier the inevitable rupture." When asked, "You think it probably would?" he replied: "I do not think so, but might have been. * * *"

Another physician who was called to attend the deceased at his death, and who also attended the autopsy, testified that a rupture of an aneurysm occurs "because the blood vessel has reached the limit of its resistance; it is the pressure that is put on it; an increase in blood pressure above normal is apt to cause a rupture, and such pressure is increased after exertion or prolonged exercise." When asked if he would consider the exertion involved in the labor performed by the deceased "sufficient exertion to cause a rupture," he answered: "I think an aneurysm of that magnitude would be a cause to be reckoned with." Again:

"Q. Would you go beyond that and say that it was reasonable to say that it had some bearing on it? A. In my opinion, I kind of think it would, with the aneurysm as much dilated as that was.

"Q. Could you say with any reasonable degree of certainty that the work Sam Peyton did on this particular occasion * * * was a competent producing cause of the rupture? A. Well, others might disagree with me, but I kind of think so."

A third doctor testified:

"Q. If a man worked twenty-three or twenty-four hours with two one-half hour rest periods, slowly walking up and down on a ship's deck, could that be sufficient to cause an exertion to where that aneurysm would burst sooner than in an ordinary case? A. Yes sir. Any exertion hastens the rupture.

"Q. Do you think that would be sufficient exertion to hasten it? A. Yes sir, * * * (but) you could just as easily say exertion delayed a rupture, because exertion always causes fatigue, and fatigue always causes a lowering of the blood 'vessels' (pressure)."

█ The statute under consideration is to be construed liberally in favor of the beneficiaries. Doubts are resolved in their favor, though, of course, the statute does not bestow a mere benevolence, nor constitute

the employer an absolute insurer. Liberty Mutual Ins. Co. v. Hoage, 62 App. D. C. 189, 65 F.(2d) 822. To justify an award, there must be a direct causal connection between the work, or the conditions under which the employee worked, and the injury sustained. The injury must flow from the employment and the latter must be an inducing proximate cause of the former. New Amsterdam Cas. Co. v. Hoage, 60 App. D. C. 40, 46 F.(2d) 837. Otherwise stated, "the rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." In re Madden, 222 Mass. 487, 111 N. E. 379, 383, L. R. A. 1916D, 1000; Ayers v. Hoage, 61 App. D. C. 388, 63 F.(2d) 364; McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306.

These matters cannot rest upon mere conjecture or surmise. They must appear by the evidence, though in view of the provisions of this act the formal rules of evidence in trials at law do not obtain in these cases. 33 USCA § 923; Frank Marra Co. v. Norton (D. C.) 56 F.(2d) 246; Fink v. Sheldon Axle & Spring Co., 270 Pa. 476, 113 A. 666.

In compensation cases, the accepted definition of "accidental injury" is "an unlooked for mishap or untoward event which was not expected or designed." Pacific Employers' Ins. Co. v. Pillsbury (C. C. A.) 61 F.(2d) 101, 103. An internal injury that is sudden, unusual, and unexpected, and which results from the strain of work or overexertion, is none the less accidental because its external cause is part of the victim's ordinary work. Pacific Employers' Ins. Co. v. Pillsbury (C. C. A.) 61 F.(2d) 101; Travelers' Ins. Co. v. Locke (D. C.) 56 F.(2d) 443. The point is well illustrated in Brown's Case, 123 Me. 424, 123 A. 421, 422, 60 A. L. R. 1293, where it is said: "If a laborer performing his usual task, in his wonted way, by reason of strain, breaks his wrist, nobody would question the accidental nature of the injury. If instead of the wrist it is an artery that breaks, the occurrence is just as clearly an accident." And in the English case of Clover, Clayton & Co. v. Hughes, 26 Times L. R. 359, 3 B. W. C. C. 275, A. C. (1910) 242, quoted in Pacific Employers' Ins. Co. v. Pillsbury, supra, the former involving an employee suffering with an advanced aneurysm, it is said: "An accident arises out of the employment when the required exertion producing the accident is too great for the man

undertaking the work, whatever the degree of exertion or condition of health." Gilliland v. Ash Grove Lime & Portland Cement Co., 104 Kan. 771, 180 P. 793; La Veck v. Parke, Davis & Co., 190 Mich. 604, 157 N. W. 72, L. R. A. 1916D, 1277, quoting from Fenton v. Thornley, 5 B. W. C. C. 4; Patrick v. J. B. Ham Co., 119 Me. 510, 111 A. 912, 13 A. L. R. 427.

Although the employer is not an insurer, he accepts the employee subject to physical infirmities which may make the latter more susceptible to injury than a more healthy or robust person. Therefore, the fact that this employee was predisposed to injury by the long-existing arterial aneurysm does not preclude a compensation award if his work had some definite, discernible, and proximate relation to the rupture which caused his death. Pacific Employers' Ins. Co. v. Pillsbury (C. C. A.) 61 F.(2d) 101; In re Madden, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000; Lea Mathew Shipping Corp'n v. U. S. Employees' Comp. Commission (D. C.) 56 F.(2d) 861; La Veck v. Parke, Davis & Co., 190 Mich. 604, 157 N. W. 72, L. R. A. 1916D, 1277, 1279; Cox v. Kansas City Ref. Co., 108 Kan. 320, 195 P. 863, 19 A. L. R. 90; Milwaukee v. Industrial Com., 160 Wis. 238, 151 N. W. 247; Haskell & Barker Car Co. v. Brown, 67 Ind. App. 178, 117 N. E. 555; Gilliland v. Edgar Zinc Co., 112 Kan. 39, 209 P. 658, 29 A. L. R. 431.

In these cases, the court performs a function of limited scope. Of course, the court is not concerned with the wisdom or policy of the act. Nor does the court review the weight of the evidence, that duty and responsibility being committed by the statute to the deputy commissioner alone. His decision on the facts is final if there is substantial competent evidence to support it (Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598), though in the absence of such evidence the court should set aside the award as "not in accordance with law." Liberty Mutual Ins. Co. v. Hoage, 62 App. D. C. 189, 65 F.(2d) 822, 823.

Considering the doctrine of the foregoing cases, particularly Pacific Employers' Ins. Co. v. Pillsbury (C. C. A.) 61 F.(2d) 101, In re Madden, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000, and McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, and considering the unusually long and continuous period of labor to which the deceased had been subjected, which undoubtedly produced unusual physical exer-

tion and strain, from which a rupture of an aneurysm of this character was a probable result, and considering also the significant circumstance of the hemorrhage which occurred near the close of such labor, and the medical testimony with respect to the effect of these conditions upon the aneurysm from which the employee suffered, the court cannot hold that there is *no* substantial evidence to support the deputy commissioner's findings. The court is authorized to go no further. See, also, B. & O. R. Co. v. Clark (D. C.) 56 F. (2d) 212, and La Veck v. Parke, Davis & Co., 190 Mich. 604, 157 N. W. 72, L. R. A. 1916D, 1277.

Decree for defendant.