## LUCKENBACH S. S. CO., Inc., v. MARSHALL, Deputy Commissioner, et al.

### No. 9156.

District Court, D. Oregon.
March 16, 1931.

I. H. Van Winkle, Atty. Gen., and Wood, Montague & Matthiessen, Erskine Wood, Gunther F. Krause, and Thomas G. Ryan, all of Portland, Or., for complainant.

George Neuner, U. S. Atty., and J. W. McCulloch, Asst. U. S. Atty., both of Portland, Or., for defendant Marshall.

W. A. Illidge, of Portland, Or., for defendant Bromberg.

McNARY, District Judge.

This is an action in equity to review an award of the deputy commissioner for the Fourteenth district, under the Act of Congress of March 4, 1927, known as the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950), and is here upon a motion to dismiss.

On the 4th day of May, 1929, the claimant was an employee of the complainant on board a barge in the harbor at the city of Portland, Or., and while so employed sustained an injury resulting in his disability.

During the year immediately preceding the injury the claimant had been engaged 153 days or parts of days as a longshoreman. After notice and a hearing, the deputy commissioner found that during the year preceding his injury the claimant had earned the sum of $1,121.38 as a longshoreman, and that he had reported to the place of his employment as frequently as required, ready, able, and willing to perform his usual work; that H. Hermson is a workman engaged in the occupation of longshoreman in the same port in which claimant sustained his injuries, and is an employee of the same class; that, during the year immediately preceding the said injury, Hermson had worked as a longshoreman on 271 days, and earned $2,276.69, an average of $8.40 per day; that the average annual earnings as determined by subdivision (b) of said act are three hundred times the average daily wage; that the average annual earnings of the claimant as determined by subdivision (b) of section 10 of the act (33 USCA § 910 (b) are $2,520; that, as a result of the injury sustained, the claimant was wholly disabled from May 4, 1929, to and including November 14, 1930, and that he is entitled to 80 weeks' compensation at $25 per week for such disability.

The deputy commissioner awarded the claimant compensation in accordance with the findings.

That part of the act pertinent here is as follows:

"Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

"(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"(b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"(c) If either of the foregoing methods of arriving at the annual average earnings of an injured employee can not reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury." 33 USCA § 910 (a to c).

The Longshoremen's and Harbor Workers' Act was, in substance, an adoption of the Workmen's Compensation Law of New York (Consol. Laws N. Y. c. 67).

The rule is settled that, when a statute has been adopted by Congress from a state, the judicial construction placed upon such statute by the highest court of the jurisdiction from which it has been taken accompanies it, and is treated as incorporated therein.

The sections in question have been frequently construed by the courts of the state of New York. In Littler v. Fuller Co., 223 N. Y. 369, 119 N. E. 554, 555, it was held that compensation to a bricklayer, who had worked at his trade about 180 days, should have been awarded under a subdivision corresponding to subdivision (c) of section 10 of the Longshoremen's Act. There the court said: "Three hundred days' work in the year is the standard of steady employment. 'The average weekly wages of an employee shall be one fifty-second part of his average annual earnings.' Section 14, subd. 4. The award should not exceed two-thirds of the earning

capacity. Average annual earnings are computed under subdivisions 1, 2, or 3 of section 14, as the case requires. If the nature of the employment does not permit steady work during substantially the whole of the year the annual earning capacity of the injured employee in the employment is the proper basis of compensation. Section 14, subd. 3. The true test is this: What were the average weekly earnings, regard being had to the known and recognized incidents of the employment, including the element of discontinuousness?"

In Prentice v. New York State Rys., 181 App. Div. 144, 168 N. Y. S. 55, the court said: "Subdivisions 1 and 2 of the section provide that in cases included within such subdivisions the average annual earnings shall consist of 300 times the average daily wage or salary. The number 300, used in those subdivisions, is not an arbitrary selection, but was evidently selected because it bears an approximately close relation to the number of working days in a year, Sundays and holidays excluded. Manifestly, where an employee works seven days a week for substantially an entire year, the method of determining his average annual earnings, indicated in either subdivision 1 or 2, would be an injustice to him, just as much as it would be an injustice to the employer to apply those subdivisions to a case where the injured employee has worked less than six days a week for a substantial period of time. The claim here falls more appropriately within subdivision 3."

These cases are supported by a number of other cases in the New York courts.

The state of Michigan has a law almost identical with section 10 of the Longshoremen's Act, which was construed by the Supreme Court of the state in Andrejwski v. Wolverine Coal Co., 182 Mich. 298, 148 N. W. 684, 686, Ann. Cas. 1916D, 724, as follows:

"The question in the instant case for the court, upon the facts presented by this record, is to determine under the provisions of which of the four classifications of this statute the average annual earnings of this employee must be ascertained. It is clear that the first, second, and third classes of cases relate to employments which continue during substantially the entire calendar year. About the first there is no question. The same initial language used in the second and third classifications indicates that the Legislature still had in mind employments at which employees worked substantially the whole of the year immediately preceding an injury. The employment in which the injured employee in the instant case was engaged at the time of his injury was not an employment of that character. It was not an employment in an industry which continued operations during substantially the entire year. The record shows that this is the case, not only in the Saginaw Valley district, but everywhere in the coal mining industry. * * *

"In our opinion the 'methods of arriving at the average annual earnings of the injured employee' set forth in these classes 'cannot reasonably and fairly be applied.' We must therefore conclude that it comes within the fourth classification. * * *

"In making these classifications which we have been considering, the known and recognized incidents of industrial employments were taken into consideration. The first three relate to employments wherein operations are carried on for substantially the entire year, and may be said to include the large majority of industrial employments in the state. That there were well-known industrial employments within this jurisdiction which were not so operated must also have been within the knowledge of the legislative body. That such employments were recognized and provided for is apparent from the terms and provisions of the fourth classification."

The Supreme Court of the state of California, in Mahaffey et al. v. Industrial Accident Commission, 176 Cal. 711, 171 P. 298, 299, construing a similar statute, said: "Both subdivisions 1 and 2 contemplate a kind of employment which is permanent and steady, and which, for that reason, affords to an employee the possibility, at least, of earning annually an amount measured by the number of working days in a year, estimated and fixed by the act at 300. Where this kind of employment is not shown to exist, the case falls within subdivision 3, under which the annual earnings are to be taken as the sum which will 'reasonably represent the average annual earning capacity' of the employee 'in the kind of employment in which he was then working, or in any employment comparable therewith, but not of a higher class.' Under this subdivision, the amount of annual earnings is not reached by multiplying the employee's daily earnings by any arbitrary figure, but by ascertaining from the evidence what his earning capacity in fact was. The evidence before the commission did not show that Rees could have earned in the employment in question, or in any employment comparable to it, anything more than the amount which he had ac-

tually earned in the past, which was but a fraction of the amount fixed by the commission as his average annual earnings.".

The question here involved is whether the claimant's average weekly earnings should have been determined under subdivision (b) or should fall within subdivision (c).

The method set forth in subdivision (b) clearly implies that it should be followed only in cases where the employee had been engaged in steady and regular employment, or had followed an occupation in which he might reasonably be expected to work 300 days in a year.

This interpretation has been given to the New York statute by the highest court of that state, and it was adopted and made a part of the Longshoremen's and Harbor Workers' Act; and, having in view the obvious purpose of the act, as appears from its contents, there is no other logical interpretation.

If the standard fixed by subdivision (b) were to be used in measuring the compensation of employees who had been engaged in seasonal, casual, or intermittent occupation, it would in some cases work an injustice to an employee, and more often would work an injustice to an employer.

By applying the rule of 300, the average annual earnings of the claimant were found by the deputy commissioner to be $2,520, while his actual earnings for the year prior to his injury were $1,121.38.

The construction of a statute should be in harmony with the ends of justice, if the language thereof will permit.

It clearly appears from the record that the work of the claimant, as carried on at the port of Portland, was irregular and discontinuous. Frequently reporting to the place of his employment, and readiness and willingness to work, did not give claimant's employment the characteristics of steadiness. Willingness to work, without the opportunity, does not increase one's earning capacity.

Subdivision (c) furnishes the only means whereby claimant's annual earning capacity can be reasonably and fairly determined. In many cases actual earnings alone are not sufficient upon which to base an award. By this subdivision the commissioner is given wide latitude, and is authorized to take into consideration the earnings of others of the same class as important factors.

The case of Gunther v. United States Employees' Compensation Commission (C. C. A.) 41 F.(2d) 151, is cited as supporting the award of the deputy commissioner. There the award was based upon the earnings of the claimant as disclosed by the records of the employment agency, excluding other known earnings. There was testimony showing that the claimant had earned during the year prior to his injury $40 per week, the amount suggested by the court as the proper basis of an award. The court evidently took the view that the remuneration showed continuous and steady employment.

This court cannot now determine the award claimant should receive, though it plainly appears that the award of the deputy commissioner was unauthorized and erroneously made.

The motion to dismiss will be overruled.