CHARLES NELSON CO. et al. v. PILLSBURY, Deputy Commissioner, et al. (three cases).

Nos. 2716, 2715, 2735.

District Court, N. D. California, S. D.

April 9, 1931.

884

John H. Black and James M. Wallace, both of San Francisco, Cal., for plaintiffs.

George J. Hatfield, U. S. Atty., and Francis J. Perry, Asst. U. S. Atty., both of San Francisco, Cal., for defendants.

KERRIGAN, District Judge.

The question presented by these three cases is the proper basis upon which to compute compensation due under the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950) to an employee who has not worked at the same employment for substantially the whole of the year preceding his injury. The Commission has fixed 270 days worked as the measure of "substantially the whole" of the preceding year, and in each of the present cases the injured employee had worked less than 270 days in the year preceding his injury.

The statutory provisions applicable are found in section 10 of the act (44 Stat. 1431 [33 USCA § 910]):

"Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

"(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"(b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"(c) If either of the foregoing methods of arriving at the annual average earnings of an injured employee can not reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury. * * *"

We are here concerned with sections 10 (b) and 10 (c).

A brief statement of the pertinent facts in the three cases, designating them by the names of the employees, will indicate the problem.

1. Lawlor. This man earned about $100 per month while working. During the year preceding his injury he lost three months' work on account of illness. In the remaining nine months he worked less than five days a week. He was not a member of a regular gang of workmen, but went to the water front daily, looking for work. He describes himself as a "free lance" or "prospector." The Commissioner computed his compensation under section 10 (b), and used the average daily wage of one W. Davidson, who worked 297 days and received $2,138.95 in wages in the preceding year, as a member of a steady gang, as the basis for computing the compensation.

2. Pedersen. This man worked about 250 days, and earned about $1,600 during that period. He voluntarily reduced his earnings by laying off for about three months, apparently just because he had some money and did not feel like working. The Commissioner computed his earnings under section 10 (c), and again used the average daily wage of W. Davidson as reasonably representing

the annual earning capacity of the injured employee.

3. Kugland. This man worked about 260 days. There is no evidence of lay-off or illness. The wage statements produced show that he earned $870.37. He testified that he earned from $30 to $35 a week, and that he worked for others than the companies submitting wage statements. Some of these other alleged employers reported that they had no record of wages paid to him. Section 10 (b) was applied, and the wage of Davidson was again used as the basis for computation.

The use of the average daily wage of W. Davidson as the standard in each of these three cases resulted in an award of $25 per week, the maximum award, to each man.

In connection with the Lawlor case certain evidence was taken concerning the conditions of employment among longshoremen and stevedores in San Francisco, and their earnings, which is made a part of the record in all these cases. From this evidence it appears that these men may be roughly classified into three groups, each comprising approximately one-third of the total number doing this type of work. The first group consists of the members of regular gangs, steadily employed, and earning from $160 to $185 per month. The second class, less regularly employed and somewhat less skilled or less well fitted for the work, earn from $125 to $150 per month. The third class, the "free lances" or "prospectors," are far less regularly employed, partly because they are not preferred by the employers, and partly because many of them are satisfied to do just enough work for bare maintenance. They earn from $65 to $100 or a little more per month.

■ This evidence is relevant in considering the use by the Commissioner of the wages of W. Davidson as a basis for computing compensation, whether under section 10 (b) or 10 (c). It appears, from their own testimony, that no one of the three men with whom we are here concerned actually earned an amount even approximately the earnings of Davidson, who clearly falls into the first group mentioned. Lawlor classifies himself as a "prospector" and fixes his average monthly earnings while working at $100 per month, or approximately at the rate of $1,200 per year. Pedersen was content with $1,600. Kugland, accepting his own highest estimate of $35 per week, earned not over $1,670 per year. The last two men would appear to belong to the second group. On the basis of their own statements none of these men would be entitled to the maximum award.

■ Taking these facts into consideration, together with the evidence as to general working conditions, I believe that it must be held that Davidson is not in the "same class," as the phrase is used in section 10 (b) or "of the same or most similar class," as the phrase is used in section 10 (c). The manifest intention in both sections is to provide a basis for computing the wages of a man who has not worked substantially the whole of the preceding year which shall fairly represent his earning capacity. The use, as a basis for computation, of the average daily wage of a man of a group with higher earning power than that to which the injured employee belongs is not contemplated by the statute, and for this reason alone the motion to dismiss in each case should be denied.

■ In the case of Pedersen, in which section 10 (c) was applied, this was the only question raised. In the cases of Lawlor and Kugland, it is also contended that section 10 (c), rather than section 10 (b), should have been used. I believe that plaintiffs are correct in this regard, for the reasons set forth by Judge Neterer in Andrew F. Mahony Co. v. Marshall (D. C.) 46 F.(2d) 539, and by Judge McNary in Luckenbach Steamship Co. v. Marshall (D. C. Or., March 16, 1931) 49 F.(2d) 625.

Accordingly the motion to dismiss is denied in each case, and the awards will be set aside, with directions to the Commissioner to make awards in accordance with this opinion in each case.