**PACIFIC S. S. CO. et al. v. PILLSBURY, Deputy Com'r, et al.**

District Court, S. D. California, C. D.
June 26, 1931.

McCutchen, Olney, Mannon & Greene, Farnham P. Griffiths, and Charles E. Finney, all of San Francisco, Cal., for plaintiffs.

Samuel W. McNabb, U. S. Atty., and Ignatius F. Parker and Dorothy Lenroot Bromberg, Asst. U. S. Attys., all of Los Angeles, Cal., for defendants.

COSGRAVE, District Judge.

The bill of complaint in this action seeks suspension and setting aside of the order of Warren H. Pillsbury, deputy commissioner of the Thirteenth compensation district under the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424, 33 USCA § 901 et seq.), wherein the deputy commissioner awarded to V. H. Hammer compensation for injury suffered while working as a stevedore on board a lighter then alongside one of the plaintiff's ships at the port of San Diego. Compensation was awarded at the rate of $25 a week under section 10 of the act (33 USCA § 910).

Claimant had been employed as teamster for San Diego county for a number of months, and began work as a stevedore on April 6, 1930. He continued in this employment until August 16th following, a period of 4½ months, when the accident occurred from which he suffered the injury. It was admitted that this was in the course of his employment.

The testimony on which the award is based is so confusing and uncertain as to render a clear finding of facts by the commissioner very difficult and a review of the evidence by the court equally so. Claimant stated that he had worked as much as five days a week and a total of 270 days during the year, and estimated his wages as $35 a week. This estimate, however, was not based on any exact figures, but upon his living expenses. From the time he commenced as a stevedore he lost no time on account of illness and took but a few days vacation and was on hand daily to accept any offered employment.

It fairly appears from the testimony taken at the hearing that the stevedore workers at San Diego harbor may be placed in three general classes: Those constituting a regular

gang that worked on the "white boats," being the steamships Harvard and Yale, at least four days a week, and had a preference as to all other cargo handling and had fairly regular employment. The next in order are referred to as the lumber list, whose employment was not so steady and continuous as those on the list just mentioned. The third list was known as the cargo list. When there were not enough men to supply the lumber list, they were taken from the cargo list. Claimant was on the latter list. He worked on some lumber boats and occasionally on the Harvard or Yale. He was not in a regular gang. Only men in the regular gang or preferred list worked as much as 270 days or parts of days a year. The manager of the Marine Service Bureau, which seemed to be the principal agency in distributing the work at San Diego, was called as a witness and believed that claimant was earning over $100 per month, but he could not say how much. The average earnings of men in the class similar to that of claimant were estimated by him to be $130 a month. None made more than $150. The nearest approach to accuracy in the entire testimony is the amount actually earned by claimant during the 4½ months of his employment. This is conceded to be $355.38, or a weekly amount of $19, and of this amount $50 is estimated. Trimble, upon whose earnings the award to claimant was based, was on the regular gang working the Harvard and Yale regularly. He was described by the Pacific Coast Steamship Company as working harder and longer hours than any other man on the water front, and averaged $223.79 per month.

The commissioner found that claimant did not work substantially the whole of the year preceding his injury; that he was able and willing to work and sought work on each working day; "that another stevedore employed at the port of San Diego during the year immediately preceding claimant's injury, i. e., one Trimble, worked substantially the whole of the year as a stevedore and earned during said year wages in excess of $1,950; * * * that claimant's wage and compensation rate is therefore fixed at such maximum under section 10 (b) of said Act."

Complainant's point of attack is the action of the commissioner in fixing the compensation of claimant under subdivision (b) of section 10 instead of under subdivision (c), and further rating compensation of claimant according to that earned by the workman Trimble who, complainant claims,

is not in a class similar to that of claimant within the contemplation of the act.

The act in question, Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424, 33 USCA § 901 et seq.), provides in section 10 (33 USCA § 910):

"Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

"(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"(b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"(c) If either of the foregoing methods of arriving at the annual average earnings of an injured employee can not reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury."

By the provisions of the act involved in this action (Longshoremen's and Harbor Workers' Compensation Act [44 Stat. 1424, 33 USCA § 901 et seq.]), two general methods of arriving at the compensation to be awarded injured employees are provided, with a third method which is to be used when neither of the first two can reasonably and fairly be applied. This may be said to result in three divisions of employees: First, those who have worked substantially the whole of the year immediately preceding the

injury and whose average annual earnings are fixed at three hundred times the average daily wage earned during the time they were so employed. Second, those who have not worked the whole of such year; their average annual earnings are deemed to be three hundred times the average daily wage of a person of the same class who works substantially the whole of such year in similar employment and neighborhood.

It is evident that both of these provisions contemplate employment that is continuous and regular to the extent of affording employment for substantially the whole of the year. By administrative construction a variation or tolerance of 10 per cent. from the 300-day standard year is allowed so that the minimum constituting what is substantially a whole year is 270 days. In order to effect a computation under subdivision (b), the employment must be such that there are those who have worked in it or similar employment substantially the whole of the year immediately preceding the injury.

The third method is to be used when neither of the methods mentioned can fairly and reasonably be applied. This situation might arise in many cases. For instance if an employee works 365 days a year, it would be an injustice to him to compensate him on the basis of only 300 days. On the other hand, if an employee worked fewer than 270 days, it would be unfair to the employer to fix his compensation on the assumption that he worked a full 300 days.

In the third case, i. e., if either of the methods described cannot reasonably and fairly be applied, the compensation is to be based on the annual earning capacity of the injured employee; the elements determining this being the previous earnings of the injured employee and of other employees in a situation most nearly similar.

Two questions are presented to the court: Was the commissioner justified in fixing the compensation of claimant as provided in subdivision (b) of section 10 of the act, i. e., according to the wages earned by one who was employed during substantially the whole of the year in a similar employment in the same locality? If this course was proper, was the basis of comparison, i. e., the wages of Trimble, a proper one?

Admittedly there were three classes of stevedores at San Diego. Trimble was on a regular gang or preferred list, the members of which were the only ones working 270 days a year. Claimant was not on this list, but was on the cargo list and did not work 270 days a year. Trimble worked harder and longer hours than any other man on the water front. He was on the preferred list, the one most favorably situated. In the face of claimant's actual earnings of $365, or less than $90 per month, and his situation on a list not working 270 days a year, he cannot be deemed in the same class as Trimble. Since no one in claimant's class worked substantially the whole of the year immediately preceding his injury, there is no basis of comparison by which the provisions of subdivision (b) can be applied. Mahony Co. v. Marshall (D. C.) 46 F.(2d) 539; Luckenbach Steamship Co. v. Marshall, 49 F.(2d) 625, decided by Judge McNary on March 16, 1931, District Court of Oregon, undecided by Circuit Court to date; Nelson Co. v. Pillsbury (D. C.) 48 F.(2d) 883.

The act in question is wise in its conception and beneficent in its operation. It must be interpreted and enforced with such care that it shall not be an agency of unfairness either to the employer or to the employee. Its careful and fair administration is the best guaranty of its permanence.

The proceedings are therefore referred back to the commissioner, with instructions to fix the compensation of claimant as under subdivision (c).