In the Matter of the Claim of JOHN BISHOP, Appellant, against COMER & POLLOCK, INC., Employer, and Another, Respondents. STATE INDUSTRIAL BOARD, Respondent.

Third Department, July 2, 1937.

*Charles Landesman* [*Milton Gould* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General,* for the State Industrial Board, respondent.

*William A. Earl* [*Jeremiah F. Connor* of counsel], for the respondents employer and insurance carrier.

Opinion by HILL, P. J., in which HEFFERNAN, J., concurs; BLISS, J., concurs in the decision, with a separate opinion; MCNAMEE, J., dissents, with an opinion in which CRAPSER, J., concurs.

HILL, P. J. Appeal by the claimant from a decision denying an award for disablement on account of an occupational disease. He presented proof that his disease, pulmonary tuberculosis, was due to the nature of his employment as a counterman and clerk in a wholesale meat market. He worked in a normal temperature, but from ten to thirty times a day entered the cold storage room where the meat was kept. There is no disagreement as to the facts, the employer and carrier produced no witnesses. The Board ruled as a matter of law: "This claim does not come within the provisions of the Workmen's Compensation Law" and the Chairman wrote claimant's attorney, "Tuberculosis to be covered as an occupational disease must be peculiar and characteristic to the employment."

Compensation is payable for a disablement caused by any occupational disease contracted in any employment enumerated in subdivision 1 of section 3. (Workmen's Comp. Law, § 3, subd. 2, ¶ 28, added by Laws of 1935, chap. 254.) "If an employee is disabled . * * * and his disability * * * is caused by one of the diseases mentioned in subdivision two of section three, and the disease is due to the nature of the corresponding employment as described in such subdivision in which such employee was engaged and was contracted therein, he * * * shall be entitled to compensation * * * for the duration of his disablement." (§ 39.) Claimant's disease was "due to the nature of" his employment. There was direct causal connection between the conditions under which he worked and the tuberculosis which he contracted. It followed as a natural incident from his exposure, according to the undisputed evidence. The employment was the proximate cause of the illness. If a disease is due to the nature of the employee's work, it is not necessary that it could have been foreseen; it is enough that it originated in and on account of the employment.

Compensation is awarded for accidental injuries which arise out of and in the course of the employment. The greatest hazard in a saw mill doubtless would be the danger of being cut by the buzz saw, but compensation is paid for an injury received in falling down stairs, which would not be "characteristic" of employment in a saw mill. By the same token, it is not necessary to show that the disease was "peculiar to or characteristic of" the employment. It is enough if it appears that an employee was disabled by a disease which he suffered because of the nature of his employment in the event it is one of those enumerated in subdivision 2 of section 3. A perusal of the list of hazardous employments there enumerated discloses that there are no diseases peculiar to or characteristic of hundreds of them. The Legislature, after listing twenty-seven diseases peculiar to particular occupations, enacts the all-inclusive paragraph, and, as earlier quoted, section 39 provides that when an employee is disabled by a disease due to the nature of the employment, he shall be compensated. The question whether a disease was caused by an accident or developed without catastrophe has troubled the courts and is the subject of many opinions not always readily reconciled with every-day experience in life. Lacking an accidental cause, compensation for loss of wages could not be given. Judge POUND, in *Lerner* v. *Rump Bros.* (241 N. Y. 153) said (p. 155): "A distinction exists between accidental injury and disease, but disease may be an accidental injury. The exception arises out of abnormal conditions which must be established to sustain an award. Two concurrent limitations have been placed on

the right to recover an award * * *. *First*, the inception of the disease must be assignable to a determinate or single act, identified in space or time. [Citations.] *Secondly*, it must also be assignable to something catastrophic or extraordinary."

Discriminations, fine and fanciful, between accidents and diseases have been numerous. The entry of the germ through a slight abrasion is accidental, the absorption through the pores not. Inhalation of fumes and gases on occasions is accidental. Scientific theories, some authentic, some fallacious, have been adopted as facts to sustain or disallow a claim. A lack of consistency is found in the authorities. Awards for disablement due to diseases arising from accidental causes have been made to: The dependents of a superintendent of an apartment building who opened the window in a steam-filled room, sustained a chill and died from pneumonia (*Hocke* v. *Emdee Management Corp.*, 269 N. Y. 592 [two dissents]; 245 App. Div. 882 [two dissents]); the dependents of an embalmer's helper who died from blood poisoning (*Connelly* v. *Hunt Furniture Co.*, 240 N. Y. 83); an employee who while handling wool contracted tetanus (*Hart* v. *Wilson & Co.*, 227 N. Y. 554); an employee who inhaled coal gas which caused pulmonary tuberculosis (*O'Dell* v. *Adirondack Electric Power Co.*, 223 N. Y. 686). It has been determined in the following cases that the disease was not the result of an accident and an award was denied to: A clerk who, after being in a cold storage room for ten minutes suffered a chill which caused pulmonary edema (*Lerner* v. *Rump Bros.*, *supra*); an employee who handled hides and contracted anthrax (*Eldridge* v. *Endicott, Johnson & Co.*, 228 N Y. 21); a mechanic who contracted dermatitis following continued contact with acid used to fill storage batteries (*Wright* v. *Used Car Exchange*, 221 App. Div. 154); one who worked in an acid factory and contracted a chronic bronchial condition, through inhalation of the fumes (*Rosenthal* v. *National Aniline & Chemical Co.*, 216 App. Div. 588); an employee whose finger became infected through being immersed many times a day for more than a week in a developing solution used in a photograph gallery (*Matter of Jeffreyes* v. *Sager Co.*, 198 App. Div. 446; affd., 233 N. Y. 535).

Paragraph 28 (Laws of 1935, chap. 254) was enacted to place disability arising from a disease contracted in the course of the employment and caused thereby on the same plane with disability following an injury. It is salutary and wise legislation; its scope should not be limited. Each argument that sustains the wisdom of and the necessity for compensation for loss of wages because of an accidental injury arising out of an employment sustains compensation for loss of wages because of a disease due to the nature of the employment.

The decision should be reversed and the matter remitted for an award.

HEFFERNAN, J., concurs.

BLISS, J. (concurring in decision). John Bishop was employed as a packing clerk for a wholesale meat dealer. He was required to go in and out of a refrigerator from ten to thirty times a day. On June 30, 1936, he suddenly became ill. He had first noticed a cough which started in the spring of the year, and in the latter part of June he started to cough up blood. He then visited his doctor, who told him that he was suffering from tuberculosis. He filed a claim for disability compensation under the Workmen's Compensation Law, stating that he was suffering from an occupational disease. The attending physician's verified report stated that his work caused the activity of a Koch infection. There is an unverified medical report in the record stating that there is no relation between his illness and his occupation. That we must disregard in the face of the verified report.

The referee held that tuberculosis was not an occupational disease and disallowed the claim. The State Industrial Board denied an application to review this decision of the referee and stated that tuberculosis, to be covered as an occupational disease, must be peculiar and characteristic to the employment. This was in effect holding, as matter of law, that tuberculosis in this case was not an occupational disease within the meaning of the Workmen's Compensation Law. The Board has found that the disease from which the claimant was suffering was not the result of an accidental injury or any of the occupational diseases within the meaning of the Workmen's Compensation Law.

Article 3 of the Workmen's Compensation Law deals generally with occupational diseases and the allowance of disability compensation and death benefits therefor. It contains section 39 of the law, which provides: " Right to compensation. If an employee is disabled or dies and his disability or death is caused by one of the diseases mentioned in subdivision two of section three, and the disease is due to the nature of the corresponding employment as described in such subdivision in which such employee was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for the duration of his disablement in accordance with the provisions of article two." Section 40 in the same article reads in part: " Neither the employee nor his dependents shall be entitled to compensation for disability or death resulting from disease unless the disease is due to the nature of his employment and contracted therein, or in a continuous employ-

ment similar to the one in which he was engaged at the time of his disablement, within the twelve months previous to the date of disablement, whether under one or more employers."

Subdivision 2 of section 3 is found in article 1 of the law and, so far as here material, says:

" 2. Occupational diseases. Compensation shall be payable for disabilities sustained or death incurred by an employee resulting from the following occupational diseases:

| " Column One<br>Description of Diseases | Column Two<br>Description of Process |
|---|---|
| * * * | * * * |
| " 28. Any and all occupational diseases. | 28. Any and all employments enumerated in subdivision one of section three of this chapter." |

The statute thus creates two conditions precedent to the allowance of compensation for disability resulting from disease. *First*, the disease must be due to the nature of the employment, and, *second*, it must have been contracted therein. In other words, it must be due not only to the particular employment, but also to the nature of that employment. The disease should be one which is commonly associated with the occupation and which is acquired in the usual and ordinary course of employment in the particular occupation and is incidental thereto. It should be one of the usual results of the occupation as well as the actual result thereof.

The first twenty-seven paragraphs in subdivision 2 of section 3 enumerate certain diseases which are exclusively occupational and due to the nature of the employment in which they may be contracted. There are other diseases of the same type, of which cedar poisoning, alcohol poisoning, painter's colic and pulmonary asbestosis are examples, the contraction of which is substantially confined to persons engaged in certain occupations. This second class is clearly included within the new paragraph 28. There is also another class of diseases, general in their nature, but which are more often contracted by persons in certain occupations, are reasonably to be anticipated as one of the results of such occupations and from the common experience of mankind are known to be incidental thereto. Of this class the following may be used as examples: hernia, caused by regular heavy lifting, tuberculosis developed from inhaling gases or dust, wrist drop from regular carrying of heavy loads and gradual loss of sight from gazing at powerful lights. This group is also within the purview of paragraph 28 when due to the nature of a hazardous employment and contracted therein.

Within this latter group comes the instant case, for the disease, tuberculosis, while general, was here due to the nature of the employment and contracted therein.

There is also another group of diseases, general in nature, which may in certain cases be contracted in a given hazardous employment, but are not due to the nature of that employment. These were not intended to be included within the added paragraph number 28.

I do not seriously differ with Judge McNamee as to his definition of an occupational disease or as to what was intended to be included within paragraph 28.

In *Lerner* v. *Rump Bros.* (241 N. Y. 153) Judge Pound, writing for the Court of Appeals, says: " Death was due to disease. The disease was not an occupational disease, the natural and unavoidable result of the employment."

The State Industrial Board has in effect held that because tuberculosis is a general disease, *i. e.*, one to which all persons are exposed and which is contracted by persons in all walks of life it is not an occupational disease within the meaning of the statute. As I interpret the opinion of our presiding justice he holds that any disease which is contracted in the course of the employment and caused thereby is an occupational disease, regardless of whether it is one of the results of the nature of the employment. I do not differ with him as to whether such a result may be desirable. But we are limited by what the statute says.

The Board was not justified in disallowing the .claim at bar. We may not say as matter of law that there is no connection in the ordinary mind between tuberculosis and the bodily exposure incident to an occupation which requires the employee to go from one extreme of temperature to another as many as thirty times a day. If we were to draw upon our own experience we would say that such an occupation and its incidental exposures did ordinarily result in some form of pulmonary affliction. There was at least a question of fact here as to whether the disease was due to the nature of the employment for concededly it was contracted in the employment.

At the only hearing held in this matter before the referee the claimant was not represented by counsel and the referee after a few brief questions put to the claimant announced that it was not necessary to bring in doctors on the question of causal relation; that it was his understanding that the Board was holding that tuberculosis *per se* was not an occupational disease and that he would disallow the claim on that ground. Thus the claimant had

no fair opportunity to present his case and more completely establish that his disease was both the result of the nature of his employment and contracted therein and the door was closed against him at the very outset.

The decision of the State Industrial Board should be reversed and the matter remitted to the Board for further action.

McNAMEE, J. (dissenting). The claimant was an office clerk, counterman and packer in the wholesale meat market of the employer for thirteen years. His duties required him to go into a refrigerator from ten to twenty times a day. He noticed something wrong with his health for the first in the spring of 1936, when he learned that he had a " spot " on his lung. He began to cough blood in June of that year, and stopped work on July fourth following. He was then infected with tuberculosis. No other fact was proved to indicate the origin of claimant's disease.

In attending physician's reports Dr. Shure stated his opinion to be that claimant's work " caused activity of a Koch infection " (tuberculosis); that he had known the claimant for ten years, and never before found evidence of that disease. It was his opinion, that entering a refrigerator several times a day *resulted* in claimant's condition, and that the " *accident* as above described " was a competent and producing cause " of the injury sustained." He did not give the opinion that claimant's work was the cause of his disease.

An award having been denied by the referee, claimant made an application *in extenso* to the State Industrial Board for a review, upon all of the evidence in the case, and this was denied. In that connection the Chairman of the Board wrote: " We have examined the record and we believe that the evidence adduced fails to indicate that the claimant's condition is the result of an occupational disease within the meaning of the Workmen's Compensation Law. Tuberculosis to be covered as an occupational disease must be peculiar and characteristic to the employment."

Upon the evidence submitted on the merits the industrial board made the following finding: " 3. The evidence and medical testimony adduced at the hearings establish that the disease from which the said John Bishop is suffering is not the result of an accidental injury or any of the occupational diseases within the meaning of the Workmen's Compensation Law."

Claimant now contends, upon the showing made, that the tuberculosis from which he suffered was, as a matter of law, an occupational disease within the meaning of the Workmen's Compensation Law. There is no contention that an accident happened.

Section 3 of the Workmen's Compensation Law has to do with compensation, and the cases in which it shall be payable. Subdivision 1 of that section is entitled "Hazardous employments," and contains the list of such employments; and subdivision 2 is entitled "Occupational diseases," and catalogues those occupational diseases which are compensable. Subdivision 7 of section 2 provides that *injury* and *personal injury* mean "only accidental injuries * * * and such disease or infection as may naturally and unavoidably result therefrom." Thus all of the benefits of the Workmen's Compensation Law have for their bases one or the other of two facts, viz., an accidental injury, or an occupational disease. These are not only wholly different grounds for claim, but are entirely separate in origin. The first section mentioned reads:

" § 3. * * * 1. Hazardous employments. Compensation shall be payable for injuries or death incurred by employees in the following employments: [Then follows the list of twenty groups of employment.] 2. Occupational diseases. Compensation shall be payable for disabilities * * * resulting from the following occupational diseases: * * *.

| " Description of Diseases | Description of Process |
| --- | --- |
| " 28. Any and all occupational diseases. | 28. Any and all employments enumerated in subdivision one of section three of this chapter." |

" Any and all occupational diseases," of course, do not include *all* diseases; and the statute provides that the only employments from which compensative occupational diseases may arise are those mentioned in subdivision 1 of section 3. Group 14 of subdivision 1 includes work in meat markets. The claimant here not only makes no claim that he suffered an accident, but, on the contrary, his testimony excludes the idea of an accident. And accordingly, if he is to recover in this proceeding it must be upon the theory that he has suffered an *occupational disease* in his employment in the meat market; not only that he *contracted* tuberculosis there, but that the disease so contracted is occupational in character. That part of the statute under which the claim is made does not comprehend accidents.

Authority has defined an infectious disease as one caused by parasites, such as bacteria, which may be contagious or not, and has defined tuberculosis as an infectious disease caused by *Mycobacterium tuberculosis*. Tuberculosis is an infection that may be disseminated throughout the body, in many forms, affecting

many tissues, bones and joints, including the skin, and the brain, and affecting also birds, chickens, ducks, and similar animals, and cattle. These and other types of the infection are sufficiently known and common to have their own respective scientific names. (American Illustrated Medical Dict. [16th ed. 1932].) Webster defines an infectious disease as one caused by the entrance, growth and multiplication of bacteria in the body; and he defines an occupational disease as one brought on by, and arising from the occupation of the patient.

That tuberculosis is a germ disease that attacks the human body in almost all of its organs and parts is not only generally accepted scientifically, but has become a part of our stock of general knowledge, known to all reasonably informed persons. A generation ago it was the subject of a State-wide campaign against the scourge, as it was called, with the slogan " No uncared-for tuberculosis in 1915," and it was the subject of almost every form of advertising. And that campaign so far succeeded that there is now scarcely a hamlet or farm in the State where a case exists, or is suspected, which is not subject to visitation by a tuberculosis nurse.

A large part of article 16 of the Public Health Law is devoted to protection against, and the treatment of tuberculosis (§§ 319–332). The statute (§ 320, repealed by Laws of 1936, chap. 237) declares it to be an " infectious and communicable disease, dangerous to the public health." And as early as 1903 the State provided for the erection of hospitals for its isolation and care (§ 319), for disinfection of and prohibition against occupancy of premises after tuberculosis patients were removed, the restraint of careless patients, the protection of the family by doctors and health officers, mandatory report of cases, and penalties for failures in these particulars (§§ 320–332). In 1917 the State *compelled* every county to build a tuberculosis hospital, or contract with an adjoining county to care for county patients (County Law, § 45). In none of these intense and widespread endeavors, nor in the provisions of any of these laws, was the meat market, meat handlers, or other employees thereof the object of special attention; nor was any of these suggested as a special source or cause of the disease.

It well may be that the claimant contracted tuberculosis in the meat market, as a matter of *accident*. This might have happened if he drank, or absorbed through a wound, some infected liquid; if he had eaten a piece of bologna that was infected, if he had shaken hands with, or come into contact with the sputum of, a tubercular customer. If any such or similar thing happened, and he became infected, he would have contracted tuberculosis arising out of and in the course of his employment, but it would

be an accident. The infection would not be, for those reasons, an occupational disease, but an accidental injury. As said by one of my brethren of this bench, the greatest hazard in a saw mill is the danger of being cut by the buzz saw; so also, one may fall downstairs in such a place. But these do not result in occupational diseases, they are accidents. The employee here is not claiming an accident.

No doubt a case of tuberculosis sometimes occurs in a meat market, or other hazardous employment; but that does not classify it as an occupational disease. It would not be so if a thousand cases occurred there; because a thousand other cases may occur also in each of a thousand other employments, or in no employment. Doubtless as many cases have occurred among housewives as among those of any other pursuit. But if the cause of the infection is not traceable to the *work* in question, so that it could be said that the nature of the work, *in sese*, usually produces the poisonous germ or usually transmits it, it is not an occupational disease. The mere infection of a person engaged in a meat market does not render his disease occupational, any more than blood poisoning from stepping on a rusty nail, broken arms from falling off roofs, ladders, or scaffolds constitute occupational diseases of carpentry. But they often happen.

The theory and argument have been presented that we all have germs in us, and that some of us have more than others, and are therefore more susceptible to disease; and that a frequent change of temperature may activate excessive tubercular germs. The difficulty with that theory and its arguments is that the statute does not comprehend them. The statute deals with certain classes of *work*, the *nature* of the work, and disease arising therefrom, and not with the peculiar susceptibilities of workmen. If the fact is that claimant's infection was contracted elsewhere, and was activated by the peculiarities of his work, then the disease came from another source and was not occupational, but accidental. Accidents overtake one man where another would escape. Neither case would change the nature of the employment.

Under the statutes of Connecticut (Gen. Stat. 1930, § 5223) an occupational disease is one " peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such; " and the Rhode Island statute (Public Laws of 1936, chap. 2358) declares an occupational disease to be one " which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment." The statutes of Illinois and Wisconsin are so broad in their scope, and involve so many inclusions and exclusions,

that they are of little service as a guide in a State where the Legislature has failed to require any special construction of the expression " occupational disease."

An occupational disease is the " natural and unavoidable result of the employment." (*Lerner* v. *Rump Bros.*, 241 N. Y. 153, 155.) The courts of Ohio have limited the meaning of occupational disease to one " contracted in the usual and ordinary course of events, which from the common experience of humanity is known to be incident to a particular employment." (*Industrial Commission* v. *Roth*, 98 Ohio St. 34; 120 N. E. 172.) And in the State of Washington " an occupational disease is one which is due wholly to causes and conditions which are normal and constantly present and characteristic of the particular occupation; * * *. Every worker in every plant of the same industry is alike constantly exposed to the danger of contracting a particular occupational disease." (*Seattle Can Co.* v. *Department of Labor & Industries*, 147 Wash. 303, 309; 265 P. 739.) In Missouri an occupational disease is one " contracted in the usual and ordinary course of events, which, from the common experience of humanity, is known to be incidental to a particular employment." (*Lobell* v. *Williams Bros., Inc.*, [Mo. App.] 50 S. W. [2d] 710, 713.) And in Iowa it is " a disease which is the usual incident or result of the particular employment in which the workman is engaged." (*Gay* v. *Hocking Coal Co.*, 184 Iowa, 949; 169 N. W. 360.)

Under its statute, the Supreme Court of Errors of Connecticut held that tuberculosis was not an occupational disease, saying " the disease must be a natural incident of a particular kind of employment, one which is likely to result from that employment because of its inherent nature," as distinguished from the peculiar conditions surrounding it, such as lack of space, improper sanitation, etc. (*Madeo* v. *Dibner & Bro., Inc.*, 121 Conn. 664; 186 A. 616); and so the same court held that pneumonia was not an occupational disease, because not " peculiar to the occupation in which the employee was engaged." (*Galluzzo* v. *State*, 111 Conn. 188; 149 A. 778.)

The claimant stresses, as supporting his claim, two cases in the State of Wisconsin, *Thomson & Co.* v. *Industrial Commission* (194 Wis. 600; 217 N. W. 327) and *Wenrich* v. *Industrial Commission* (182 Wis. 379; 196 N. W. 824). They were cases of tuberculosis, but have no application here. One of those cases arose from a continued inhalation of wheat dust and the other granite dust. In this State we would refer to grinders' diseases now as silicosis cases. The American Illustrated Medical Dictionary defines silicosis as " Pneumonoconiosis due to the inhalation of

minute particles. It is attended by fibroid induration and pigmentation." It is evident, those cases in their nature involved a direct deposit of a foreign and deleterious substance on the lungs; and in addition they were decided under a statute which compensated "accidental injuries, *all other injuries,* including occupational diseases, growing out of and incidental to the employment." It may be noted that that State has amended its statute twice since, in 1931 and 1933; so that compensation now may be awarded for "mental or physical harm" to an employee caused by accident or disease, thus substantially abandoning the notion of "occupational disease."

It has been suggested in the opinions of the prevailing justices that sections 39 and 40 of the Workmen's Compensation Law deal generally with occupational disease. I am unable to find any such meaning in either of those sections. They do deal with the *extent* of compensation payable when an occupational disease, as prescribed in section 3, has been established, as herein indicated; but they do not in any degree determine when such a disease is present, nor of what an occupational disease consists, except by reference to section 3.

The only question necessary to decide here is whether the claimant contracted an occupational disease in the meat market in which he was employed. He did contract tuberculosis in the course of his employment; but was the disease occupational? It would be difficult in this case, if not impossible, to catalogue by empiric and pragmatic definition, within the scope of the Workmen's Compensation Law and to meet every case, all of the elements to be considered in determining what is an occupational disease. But in the common understanding of our language, from technical authority, and from the composite view of sister States, it is reasonable to say that an occupational disease generally is one contracted in the usual and ordinary course of a trade, occupation, or employment, and which is due to causes normally present in such pursuit in excess of the hazards of employment generally, and which from our common experience has been found to be peculiar to and characteristic of the nature of the work performed.

As has been suggested, tuberculosis is well known and shockingly prevalent, affecting persons of all ages and in every pursuit. It afflicts not only the human family, but the brute kingdom as well. The record in this case is wholly barren of any evidence that tuberculosis is peculiar to or characteristic of meat markets or the employees thereof, or that such employees are commonly or even frequently infected by the disease. There is no evidence that the disease inheres in the work of meat markets, or even that work

in and out of coolers, cold storage plants, ice houses, or similar places is the source or cause of tuberculosis. Such evidence would be against common knowledge. But even if it were possible to submit credible evidence that tuberculosis was an occupational disease, naturally incident to work in a meat market, not only was there no proof of that character given, but none was offered. The claimant not only failed to prove his case, as a matter of law, but the facts presented did not justify an award in his favor.

The decision of the State Industrial Board should be affirmed, and the claim dismissed.

CRAPSER, J., concurs.