**CHAUSSE v. LOWE, Deputy Com'r of Employees' Compensation Commission, et al.**

**No. 8566.**

District Court, E. D. New York.

Dec. 2, 1938.

Silas B. Axtell, of New York City, (Lucius V. Axtell, of New York City, of counsel), for plaintiff.

Michael F. Walsh, U. S. Atty., of Brooklyn, N. Y. (Clarence Wilson, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendant Samuel S. Lowe, as Deputy Com'r of Employees' Compensation Commission for Second Compensation Dist. of United States.

Bernard Botein, of New York City, for defendants Seaboard Sand & Gravel Corp. and State Ins. Fund.

CAMPBELL, District Judge.

This is an action for a mandatory injunction to direct Samuel S. Lowe, Deputy Commissioner of the Second Compensation District, to set aside findings of fact, order and opinion, and restraining him from enforcing said order, dated June 16, 1938, and that he be further directed to

make a new order allowing the plaintiff's claim for compensation and awarding him such sum or sums as he is entitled to pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

The Deputy Commissioner found the facts as follows: "That on the 7th day of April, 1937, the claimant above named was in the employ of the employer above named at New York, in the State of New York, in the Second Compensation District, established under the provisions of the Longshoremen's and Harbor Workers Compensation Act, and that the liability of the employer for compensation under said Act was insured by State Insurance Fund; that on said day and for nine or ten years prior thereto, claimant herein was performing service as a scow captain for the employer; that for about seven years immediately preceding said day, he had been in charge of the Scow 'Seaboard No. 16'; that he lived aboard the said scow and went with it from place to place within the harbor of New York and to Port Jefferson, Long Island, and sometimes to points in Connecticut on Long Island Sound; that the scow was a flat-decked vessel with bulkheads on each end, about nine feet high, which formed a wall against which the cargo of sand which was usually carried was piled; that the bulkhead on the stern-end of the scow formed an outer wall of a cabin about twenty feet square on the deck of the scow which the claimant occupied; that about two or three times a month it was customary to load a cargo of sand at Port Jefferson, and that the sand was pumped out of the Bay, put through the employer's plant and loaded on to the scow, while wet; that when loaded on the scow it was about 25% salt water; that although the bulkhead was supposed to be watertight, some of the water which drained from the sand ran underneath the bulkhead into the claimant's cabin, so that each time sand was loaded at Port Jefferson, the floor of his cabin became damp; that the cabin floor was not continuously wet, but remained wet for three or four hours after the sand was loaded; that about five months prior to April 7, 1937, the claimant contracted a cold and began to cough and that he continued to cough and feel badly, until on April 7, 1937 he was referred by the employer to the United States Marine Hospital for examination; that

examination disclosed an advanced pulmonary tuberculosis and a tuberculosis of the larynx; that he entered the Marine Hospital on April 8, 1937, and since that date has been wholly disabled because of tuberculosis; that written notice of injury was not given to the employer within thirty days, but that the employer had knowledge of the claimant's condition and has not been prejudiced by lack of such written notice; that the average annual earnings of the claimant herein at the time of his injury amounted to the sum of $952.12."

Upon those findings, the Deputy Commissioner ordered that the claim be rejected for the reason that the disability is not the result of an accidental injury arising out of and in the course of employment.

The clinical record of the plaintiff's case at Ellis Island sets forth the following diagnosis: tuberculosis, pulmonary, chronic, far advanced, tuberculosis of the larynx.

Dr. William T. Power, called on behalf of the plaintiff, testified that he examined plaintiff at the request of plaintiff's attorney, on April 16, 1938, and found in effect a condition of far advanced tuberculosis, and that he was not positive whether this was an arrested or quiescent T. B. case. Dr. Power further testified that the condition of the employment did not cause the tuberculosis condition, but that at most it may have aggravated a condition which previously existed, but which was, for some time previously, arrested. He further testified that it would be unusual in a man over 50 to develop tuberculosis from some unsanitary condition.

The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A., at Section 903 provides: "*Coverage.* (a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. * * *"

And, at Section 902 provides, so far as is necessary for consideration herein:

"*Definitions.* When used in this chapter —* * *

"(2) The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment. * * *"

The findings of fact of the Deputy Commissioner were sustained by the evidence, and are final. Southern Shipping Co. v. Lawson, D.C., 5 F.Supp. 321; Wheeling Corrugating Co. v. McManigal, 4 Cir., 41 F.2d 593.

The statute is remedial in its character and should be given a reasonably broad construction. Rothschild & Co. v. Marshall, D.C., 56 F.2d 415; Baltimore & Ohio R. Co. v. Clark, D.C., 56 F.2d 212; Pacific S. S. Co. v. Pillsbury, D.C., 52 F.2d 686; Wheeling Corrugating Co. v. McManigal, supra; Lumbermen's Mut. Casualty Co. of Illinois v. Lowe, D.C., 5 F.Supp. 447, but, in giving a broad construction to the statute, we must remember that it is to be construed so as not to be unfair to either party.

In the case now before this Court there is no testimony to show an accidental injury, and plaintiff's contention of his right to compensation must be based, if it is to be sustained, on the disability due to an occupational disease.

It does not seem to me that there was shown any causal relationship between the employment of the plaintiff, and his disease, tuberculosis.

Tuberculosis, it is true, has been held to be an occupational disease, but, the facts in this case do not show that the plaintiff incurred tuberculosis as a result of his employment nor does the testimony show that his condition was aggravated by the conditions under which he was employed.

The diagnosis at the Marine Hospital was of tuberculosis far advanced, and with this diagnosis, Dr. Power testified that at most, it could be said that the conditions under which he worked aggravated the disease.

In considering this phase of the matter we must not lose sight of the fact that the plaintiff had been employed under the same conditions for a long period of time and there was no evidence to show that the tuberculosis was incurred as a result of his employment. There was no complaint on his part during his employment, until on or about April 7th, when he then complained and said that about five months prior to that time he had contracted a cold and began to cough and continued to cough and feel badly.

At his age, over 50, it is very doubtful that he would have contracted tuberculosis, because of his working conditions, and we must also remember that colds may be contracted in many ways and there is nothing in the evidence to show that the cold, which the plaintiff contends he contracted, was not contracted through exposure, or other causes, and it is extremely unlikely that one suffering from an advanced case of tuberculosis, as was the plaintiff, when he was examined at the Marine Hospital, would have contracted the cold, of which he speaks, as the result of his working conditions, when he had been working under the same conditions for a long period of time, without complaint.

The mere fact that the plaintiff suffered from tuberculosis does not sustain his contention that it was either caused or aggravated by his working conditions, and the proof here offered does not show any causal relation between his working conditions and the disease.

Since this statute was enacted, the interpretations have been various, and plaintiff cites a number of cases, none of which seem to me to be in point.

In the Matter of O'Dell v. Adirondack Electric Power Co., 181 App.Div. 910, 167 N.Y.S. 1116, affirmed 223 N.Y. 686, 119 N.E. 1063, the claimant's husband, while engaged in stringing wires in an ash cellar under defendant's boiler room, became ill from coal gas, obviously, that was an injury resulting from his employment. In the Matter of Bishop v. Comer & Pollack, Inc., 251 App.Div. 492, 297 N.Y.S. 946, it clearly appears that claimant's disease was due to the nature of his employment, and that there was direct causal connection between the conditions under which he worked and the tuberculosis which he contracted. In Bay Ridge Operating Co., Inc., v. Lowe, D.C., 14 F. Supp. 280, an employee acting as a longshoreman was injured in the course of his employment, and as a result of his injury contracted tuberculosis. In that case there was an injury. In the case at bar,

there was not. In Ayers v. Hoage, 61 App.D.C. 388, 63 F.2d 364, it clearly appeared that claimant's disease of tuberculosis had been contracted from his sister. In Travelers' Ins. Co. v. Locke, D. C., 56 F.2d 443, the deceased received injury while engaging in piling boxes on tiers in the hold of a vessel, and thereafter was operated on for hernia and died immediately after the operation. Death was therefore attributed to injury. In Southern Shipping Co. v. Lawson, supra [5 F.Supp. 324], the Commissioner found that the disease of the employee was caused by accidental injury which he defined as "an unlooked for mishap or untoward event which was not expected or designed", citing Pacific Employers' Ins. Co. v. Pillsbury, 9 Cir., 61 F.2d 101, 103. In the Matter of Sigrid Easer v. Charles A. H. Pratt, 261 N.Y. 628, 185 N.E. 767, claimant's husband was employed as a gardner and farmer, on the estate of the defendant, and the Board found that in putting out a brush fire on the premises, he became exhausted from inhaling smoke resulting from his efforts and that a dormant heart condition became exacerbated and aggravated upon putting out the fire, causing him to suffer an acute heart failure and other ailments resulting in his death, and that said injuries were accidental injuries arising out of and in the course of his employ. In Todd Dry Docks v. Marshall, 9 Cir., 61 F.2d 671, the deceased was engaged as a workman in making repairs upon a vessel on which there were several cases of Spinal meningitis, which he contracted and from which he died. In that case the Deputy Commissioner found that the deceased contracted the disease while working for the employer on that vessel.

■ From a consideration of all the cases cited on behalf of the plaintiff, it appears that the disease from which the claimant or deceased suffered was the result of an accidental injury arising out of, and in the course of, his employment, and, therefore, they are not in point in this case. The Act in question was modeled largely after the New York Workmen's Compensation Law, Consol.Laws N.Y. c. 67, and accomplishes the same general purposes as the Workmen's Compensation Law of New York. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598; Nogueira v. New York, New Haven & Hartford Railroad Company, 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754, therefore, it seems to me that occupational disease is best defined in the case of Matter of Goldberg v. 954 Marcy Corporation, 276 N. Y. 313, 12 N.E.2d 311, 313, in which the Court of Appeals, in its opinion, said: "thus an occupational disease is one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general. Thus compensation is restricted to disease resulting from the ordinary and generally recognized risks incident to a particular employment, and usually from working therein over a somewhat extended period. Such disease is not the equivalent of a disease resulting from the general risks and hazards common to every individual regardless of the employment in which he is engaged".

The plaintiff does not bring himself within the definition of occupational disease, as defined in the case last cited, nor can I find that he brings himself within the definition of occupational disease as defined in any of the cases cited on his behalf.

■ The decision of the Deputy Commissioner on the facts, as found, was in accordance with the law.

A decree may be entered in favor of the defendants against the plaintiff, dismissing the complaint on the merits with costs.